UNITED STATES, Appellee

v

CLAYTON W. GOODMAN, Acting Chief Hospitalman, U. S. Navy, Appellant

13 USCMA 663, 33 CMR 195

No. 16,224

April 26, 1963

*Lieutenant Colonel M. G. Truesdale*, USMC, argued the cause for Appellant, Accused. With him on the brief was *Lieutenant Robert C. Watson*, USNR.

*Commander Benjamin H. Berry,* USN, argued the cause for Appellee, United States. With him on the brief was *Captain James W. Grant,* USN.

## Opinion of the Court

KILDAY, Judge:

Tried by general court-martial, accused was convicted of two specifications of sodomy, in violation of Article 125, Uniform Code of Military Justice, 10 USC § 925, and sentenced to dishonorable discharge, total forfeitures, and reduction to the lowest grade. The convening authority approved, without modification, the findings and sentence. A Navy board of review affirmed the conviction but reduced the sentence to bad-conduct discharge, total forfeitures, and reduction to the pay grade of E-1. We granted the accused's petition for review to consider:

Whether the law officer erred by refusing the defense request for an instruction concerning the absence of fresh complaints.

Subsequently, on motion of the appellant, to which the Government interposed no objection, we granted the following additional issue:

Whether the action of the convening authority in withholding pay and allowances on and after the date of his action on the case is legal in the absence of a sentence to confinement.

The evidence regarding the offenses of which the accused stands convicted was introduced through the testimony of the two victims. The first sailor testified that while in port at Sasebo, Japan, in December 1960 or January 1961, he went on liberty with the accused. They began drinking about seven or eight in the evening and continued until two or three in the morning. When they left the last bar they entered a cab and the accused persuaded the witness to go to a hotel. The latter admittedly was "fairly drunk." Upon arrival in the hotel room, the witness immediately laid down and fell asleep. Subsequently, he was awakened and realized that the accused was performing an act of fellation upon him. He stated that he pushed the accused away, arose, dressed, and returned to the ship. He absolutely denied voluntarily committing the act with the accused. He did not report this incident until he was questioned by the Criminal Investigations Detachment because he is a "career man" and "From what I had heard about these homosexual cases before I was scared."

The second witness' story is similar to the first. He and the accused went ashore on liberty in August 1961, and after drinking for awhile at a bar they proceeded to the accused's apartment in Sasebo and had some more to drink. The witness ultimately fell asleep and, like the first witness, was awakened by the accused committing a similar act upon him. He also denied consenting to the act. When he realized what had happened he "got up and got out and by that time the whole thing was over with. I was pretty drunk and hazy." This witness reported the incident to a shipmate and to his division officer.

The shipmate and division officer were both called, but, upon objection by defense, were unable to testify as to the nature of the statement made to them by this witness. The law officer sustained the objection of defense counsel because of a lack of showing that the alleged complaint was sufficiently close in time to be admissible as fresh complaint.

The accused elected to remain silent. Three witnesses were called who testified substantially that they had shared the same quarters with the accused for a considerable period of time and had never had any difficulties with the accused or observed any tendencies of a homosexual nature.

At the conclusion of the evidence, an out-of-court hearing was held by the law officer to discuss proposed instructions. This hearing is not reported but the record contains a statement by the law officer, to which no objection was made, as to what occurred therein. Briefly, the law officer stated that counsel were shown his proposed instructions and neither had any objection

**664**

thereto, except that defense counsel requested two additional instructions, one of which would be given. The other, an instruction in regard to the effect of an absence of fresh complaint, was refused on the ground that "It is considered a matter of argument."

In support of his allegation of error, as noted above, appellate defense counsel rely in the main on this Court's decisions in United States v Mantooth, 6 USCMA 251, 19 CMR 377, and United States v Bennington, 12 USCMA 565, 31 CMR 151.

In *Mantooth*, a case involving carnal knowledge of a female under sixteen years of age, we thoroughly explored the doctrine of fresh complaint in prosecution for sexual offenses and observed that:

". . . insofar as evidence of fresh complaint is admissible because it tends to establish a want of consent, it would seem to be superfluous in cases where an absence of consent constitutes no element of the crime. Accordingly, doubt has been expressed in such cases that a showing of fresh complaint is admissible. For instance, Wharton says that:

'. . . The rule [allowing proof of fresh complaint], however, does not extend to the crime of taking indecent liberties with a child, or to other offenses. The reason for receiving such evidence is not present in cases of assault, other than rape cases.' [Wharton, Criminal Evidence, 11th ed, § 437.]

"Wigmore, too, contends that,

'. . . the *fact of complaint* should not be admissible on a charge of *seduction,* nor ordinarily on a charge of *rape under age of consent,* except for children; but should be admissible for *other offenses* usually involving force.' [Wigmore, Evidence, 3d ed, § 1135.]"

However, we noted that the framers of the Manual clearly did not accept such a limitation "for they authorized proof of fresh complaint 'in prosecutions for sexual offenses,' and expressly included within the term crimes of the nature of sodomy and carnal knowledge in which lack of consent is not an element." See Manual for Courts-Martial, United States, 1951, paragraph 142c. In such circumstances we stated that, "in those instances in which evidence of fresh complaint is accepted a showing of the absence of such a report should be regarded as equally admissible. See State v Richardson, 349 Mo 1103, 163 SW2d 956." 6 USCMA at page 255.

In *Bennington,* a case involving an officer and a "willing participant," we again adverted to the above-noted paragraph of the Manual. Although in that case we held the testimony as to the "fresh complaint" to be inadmissible, we did so on the ground that the testimony was not of such a nature as to be classified as a complaint. It seemed to be "no more than ordinary barracks gossip at best or . . . malicious bragging over implicating a respected officer with a disgusting and degrading charge." 12 USCMA at page 571.

The admissibility of a "fresh complaint" in a sodomy case was upheld by a Coast Guard board of review in United States v Stell, 4 CMR 490.

There is a certain amount of discord among the civilian precedents over the admissibility of fresh complaint in a prosecution for sodomy. As noted above, Wharton states that the rule does not extend to offenses other than rape and Wigmore believes that it should not be admissible. The Supreme Court of Virginia, in Pepoon v Commonwealth, 192 Va 804, 66 SE 2d 854 (1951), a case involving a charge of sodomy upon a three-year-old boy, stated:

"We have carefully examined all the authorities referred to by the learned counsel . . . and it is manifest that the only exception . . . to the general rule excluding the statements or declarations of parties as hearsay evidence, as a complaint is the exception in cases of rape.

. . . . . . .

" 'We are not disposed to extend this exception to the rule. . . .' "

Compare People v Stevens, 11 Ill 2d 21,

141 NE2d 33, and cases cited therein at page 37.

However, Underhill, in A Treatise on The Law of Criminal Evidence, 5th ed, § 692, says:

"As in a prosecution for rape, prompt complaint by a nonconsenting victim of the accused is admissible." [Citing Soto v Territory, 12 Ariz 36, 94 Pac 1104.]

See also State v Shambo, 133 Mont 305, 322 P2d 657; Johnson v State, 201 Tenn 11, 296 SW2d 832; Sherrill v State, 204 Tenn 427, 321 SW2d 811; Franks v State, 166 Texas Crim 455, 314 SW2d 586; State v Withrow, 142 W Va 522, 96 SE2d 913; People v Bumbaugh, 48 Cal App 2d 791, 120 P2d 703 (1941).

In State v Beaudin, 76 Wash 306, 136 Pac 137 (1913), a case involving sodomy performed on a two and one-half-year-old child, the court held that:

". . . It was proper to permit the witness to testify that complaint had been made at or about the time of the alleged act, but it was error to permit the witness to repeat statements made. . . . there being no contention that the remarks made by the child were any part of the res gestae."

And, the California District Court of Appeals, First District, in People v Brown, 71 Cal App 2d 669, 163 P2d 85 (1945), sodomy with a fourteen-year-old boy, stated:

"In sex cases generally, evidence consisting of a recital of the facts by a victim to a third party is a violation of the hearsay rule, but the fact that a complaint of the commission of the particular offense was made is admissible upon the theory that it is a spontaneous exhibition, without compulsion, of the victim's physical condition or mental attitude following the perpetration of an unusual and unnatural act. People v Mayes, 66 Cal 597, 6 P 691, 56 Am Rep 126; People v Lee, 55 Cal App 2d 163, 130 P2d 168." [Cited for this same general proposition in 22A CJS, Criminal Law, § 742.]

That the Manual rule is perhaps broader than that in some other jurisdictions is unquestioned. As noted above, admissibility of "fresh complaint," outside the military, is, in some areas, confined to those cases wherein consent is an element, of which sodomy is not one. However, the Manual, supra, expounds a mode of proof for military jurisprudence, and, as long as it is not "contrary to or inconsistent with the Code, and not conflicting with other Manual provisions or principles of military justice, [it] . . . has the force of law." United States v Smith, 13 USCMA 105, 32 CMR 105.

Having established the admissibility of "fresh complaint" in a sodomy case as a rule of evidence, at least within the military, and, as such, having "the force of statutory law," we next must consider whether "the absence of such a report should be regarded as equally admissible." United States v Mantooth, supra.

In the case at bar, the law officer held that "It [lack of fresh complaint] is considered a matter of argument" and refused a defense-requested instruction.

"The crime of sodomy bears a logical relationship to the crime of ■ rape." United States v Morgan, 8 USCMA 341, 24 CMR 151. Therein we noted that:

"It has been said that sodomy and rape are 'kindred crimes' and that the principles of law governing the one also govern the other. Territory v Chee Sui, supra, page 816; Hooper v State, 302 P 2d 162 (Oklahoma). The analogy has been applied to the requirement for penetration, United States v Kelly, 119 F Supp 217; State v Pratt, 151 Me 236, 116 A 2d 924, and to the admissibility of evidence of 'fresh complaint.' See Manual for Courts-Martial, United States, 1951, paragraph 142c. The basic difference between the two is the element of consent. State v Langelier . . . [136 Maine 320, 8 Atl 2d 897.]"

Additionally, in the same vein as rape, when the crime is perpetrated against an *unwilling human being*, assault is an "essential element" of sodomy. Darling v State, 47 SW 1005 (Texas) (1898); State v Langelier, 136

Maine 320, 8 A2d 897 (1939); United States v Morgan, supra.

On the question of consent, the Criminal Court of Appeals of Oklahoma, in Cole v State, 83 Okla Crim 254, 175 P2d 376 (1946), held that:

"The abominable crime against nature has been compared to the crime of rape. Borden v State, 36 Okl Cr 69, 252 P 446. In some states it is provided by statute that children under a certain age are legally incapable of consenting to the act of sodomy, and so conviction may be had upon their uncorroborated testimony." [See cases cited therein.]

In this regard, the analogy between *sodomy and rape is further extended* to include those classifications of the latter crime identified as carnal knowledge and statutory rape.

In the case at bar, if the witnesses had consented to the act complained of, they would be considered as accomplices, and the rules in regard to corroboration of the testimony of accomplices would apply. 48 Am Jur, Sodomy, § 7. See also Manual for Courts-Martial, supra, paragraph 153a; United States v Scales, 10 USCMA 326, 27 CMR 400; Cole v State, supra; Note, LRA 1915E, page 1224; Annotation, 19 ALR2d 1352, §§ 9 and 21, at pages 1369 and 1391 (and cases cited therein). But the witnesses vigorously denied giving consent and the accused's conviction was based on their testimony alone.

The comparison between sodomy and rape is completed when consideration is given to the basis for which a complaint by an unwilling or nonconsenting victim of the crime of rape is admissible as an exception to the hearsay rule. As set forth in 44 Am Jur, Rape, § 83:

"The rule admitting evidence of the complaint is based on the well-known fact that when an outrage has been committed on a woman, the instincts of her nature prompt her to make her wrongs known, and to seek sympathy and assistance. The complaint which she then makes is the natural expression of her feelings. It may therefore be shown in evidence as a circumstance which would usually and probably have occurred in case the offense had been committed. And further failure to complain, or delay in the prosecution because of the nature of the accusation, is looked upon as a suspicious circumstance; and, to repel the inference that the story may have been a mere fabrication, which otherwise might be drawn, such evidence is admitted as tending to confirm or corroborate the statements of the injured party."

No one would deny the applicability of this rule to a nonconsenting female victim of the crime of sodomy. So, too, where a nonconsenting male is the victim. His feeling of outrage and revulsion against "the infamous crime against nature," involving, as it does, a degradation of the virile organ and vicious insult to his manhood, instinctively should be no less strong and perhaps even greater. In any event, we are certain that there cannot be one rule for women and a contrary rule for men.

In discussing the charge of rape, the Manual, supra, states in paragraph 199a, " 'it is an accusation easy to be made, hard to be proved, but harder to be defended by the party accused, though innocent.' " See United States v Chadd, 13 USCMA 438, 32 CMR 438. This statement is, likewise, particularly applicable to a charge of sodomy. In the case at bar, against the testimony of the alleged victims, the appellant produced only character witnesses in his behalf. As we said in United States v Phillips, 3 USCMA 137, 11 CMR 137:

". . . a charge of sodomy is one of the most difficult to meet. There are usually only two people who know the details of the crime—the accused, and the victim. It is often a case of the victim's story with varying amounts of corroboration, versus the accused's story without corroborative facts and circumstances. Because of this, evidence of good character is often the best, if not the only, defense which the accused can produce."

See also United States v Blackwell, 12 USCMA 20, 30 CMR 20. The Supreme Court of Virginia, in Williams v Commonwealth, 22 SE 859 (1895), a charge of sodomy, had this to say:

". . . In treating of the offense of which the plaintiff in error is charged, Russell, in his work on Crimes (volume 1, 9th Ed., p. 937), says: 'When strictly and impartially proved, the offense well merits strict and impartial punishment; but it is, from its nature, so easily charged, and the negative so difficult to be proved, that the accusation ought clearly to be made out. The evidence should be plain and satisfactory, in proportion as the crime is detestable.'"

Instructions in a prosecution for sexual crime are to be weighed with the utmost care, since in this class of cases the accused is almost defenseless and ample opportunity is afforded for the free play of malice and private vengeance. He should be given the full measure of every legal right in an endeavor to maintain his innocence. People v Hubbell, 54 Cal App 2d 49, 128 P2d 579 (1942); People v Baldwin, 117 Cal 244, 49 Pac 186 (1897).

Turning now to the particular matter at hand, the refusal of the law officer to give a requested instruction on lack of fresh complaint as affecting the credibility of the witnesses, we find the following language of the Supreme Court of Missouri, in State v Richardson, 349 Mo 1103, 163 SW2d 956 (1942), particularly appropriate:

". . . It will not do to say that proof of timely complaint is competent, notwithstanding the statute eliminates force and nonconsent as elements of the crime; but that because of the statute proof of failure to complain is incompetent. That would amount to enforcing the statute against the defendant but not against the State.

"The truth is that where proof of the one is or would be competent in a given case, proof of the other is also. . . ."

". . . In prosecutions for forcible rape of a woman over the statutory age of consent, the giving of such an instruction in correct form is proper, State v Taylor, 320 Mo 417, 431 (b), 8 SW2d 29, 35 (21); State v Palmer, 344 Mo 1063, 1066, 1067, 130 SW2d 599, 601 (5); and the refusal or modification thereof has been held prejudicial error. Champagne v Hamey, 189 Mo 709, 722, 725, 88 SW 92, 95, 97."

See also, State v Thomas, 351 Mo 804, 174 SW2d 337; State v Palmer, 344 Mo 1063, 130 SW2d 599; State v Taylor, 320 Mo 417, 8 SW2d 29.

In the same vein, the Superior Court of Pennsylvania in Commonwealth v Berklowitz, 133 Pa Super 190, 2 A2d 516 (1938), held that the trial court erred in failing to give the following requested instruction:

"'. . . If you find from the evidence that prosecutrix concealed the alleged injury after she had an opportunity to make complaint, it is a circumstance to be considered by you in weighing the credibility of her testimony.'"

In Stewart v State, 25 Ala App 266, 145 So 162 (1932), the court stated:

"In cases of rape, it has become the settled law of this state, in corroboration of the statement of the assaulted party, testimony that she made complaint of the assault while it was recent is relevant and admissible. Per contra, a failure of the assaulted party to make complaint recently after the occurrence, opportunity offering itself, will cast a suspicion on the bona fides of the charge. Pitts v State, 19 Ala App 564, 99 So 61."

Compare United States v Plummer, 1 USCMA 373, 3 CMR 107.

Also, on the issue of credibility, the Municipal Court of Appeals of the District of Columbia, in Stitely v United States, 61 A2d 491 (1948), said that:

". . . In rape cases and other cases of the nature of a sexual assault, delay in making complaint is a subject for consideration of the

jury and may seriously affect the credibility of the complaining witness. Roney v United States, 43 App DC 533; Lyles v United States, 20 App DC 559; Wigmore, Evidence (3d Ed), §§ 284 and 1135."

Inasmuch as we have in this opinion equated the crime of rape to a charge of sodomy where consent ▪ is denied, we must, perforce, conclude that the law officer erred to the prejudice of the accused in failing to give the defense requested instruction on the absence of fresh complaint.

We are not unaware of the fact that there is a basic difference between the crimes of rape and sodomy and that is the element of consent. Consent negates the crime of rape, but sodomy can be committed with or without consent. For this reason, sodomy has frequently been placed in the same category of sexual crimes as statutory rape, which occurs with or without consent of the underage female.

However, in the latter crime, the victim is *legally* incapable of giving consent, simply because she had not attained a certain age specifically set by statute, in which case lack of complaint is immaterial. As we noted in United States v Mantooth, supra, at page 256:

" '. . . In cases, however, where the willingness of the prosecuting witness is immaterial by reason of inability to consent, the matters involved in outcry or complaint have no significance.' " [Citation from Levy v Territory, 13 Ariz 425, 115 Pac 415 (1911). See also additional cases cited in support thereof.]

In *Mantooth*, which was decided solely on the basis of its application to statutory rape, we recognized that this was not an inflexible rule and that in certain circumstances lack of fresh complaint by an underage victim may be competent to show that the prosecutrix's testimony was false. In such cases, we stated, that:

". . . Consequently, it is doubtless preferable that the import of the absence of complaint be left—as in the instant case—to arguments of counsel solely, and not isolated by the law officer for the court's consideration. Of course, this is not to imply that a law officer would be guilty of an abuse of discretion in referring to a possible failure to complain promptly—if he thought that to do so would enlighten court members in a particular case."

The exceptions to the general rule in statutory rape cases are numerous and we cite just a few. In State v Davis, 190 SW 297 (Mo) (1916), cited in State v Richardson, supra, involving a charge of rape on an eight-year-old girl, the court stated that:

". . . Under these circumstances, the fact that the prosecutrix made no outcry or complaint and did nothing else tending to attract the attention of those in immediate proximity was important in determining the reasonableness of the girl's statement and her credibility as a witness."

In Commonwealth v Krick, 164 Pa Super 516, 67 A2d 746 (1949), statutory rape of a twelve-year-old girl, the Superior Court of Pennsylvania said that:

"It should be observed too that the weight attaching to a complaint depends upon the promptness with which it is made and the nature of the explanation given for any delay. Indeed an unreasonable or unexplained delay may, in the circumstances, justify an inference against the sincerity of the complaint. Com. v Mtynarczyk, 34 Pa Super 256; Com. v Allen, 135 Pa 483, 19 A 957; Com. v Oyler, 130 Pa Super 405, 197 A 508. The weight of the testimony is for the jury but the court should carefully instruct it as to the relative probative value of prompt and delayed complaints, the circumstances in which they are made or withheld, and the possible inferences which may be legitimately drawn from them."

And in State v Hines, 79 Wyo 65, 331 P2d 605 (1958), statutory rape of a fourteen-year-old victim, the Supreme Court of that State held that the fol-

**669**

lowing instruction of the trial court was proper:

" 'The Court instructs the Jury that if the complaining witness failed to make any complaint of the crime which she claims was perpetrated on her, or failed to complain promptly, this circumstance is one to be considered by the Jury, and it is entitled to consideration in determining the credit to be given to her testimony.

" 'As affecting the credit to be given the testimony of the complaining witness, the Jury may consider whether a person under the circumstances that she testified to would not be moved to instantly complain thereof to her relatives or intimate friends, and a failure to do so or so complain, *if you so find beyond a reasonable doubt,* is to be given such weight on the credibility of her testimony as you think proper and it justly entitled to.' (Emphasis supplied.) "[1]

By way of contrast, the usual reasons for failure of an underage victim to complain of rape, in addition to her legal inability to consent, are not present in a case of sodomy where, as here,

the victim is an adult male. As we stated above, his outrage at the offender should be even greater than that commonly attributed to the female. Failure to complain promptly is hardly explained away by the statement, "I'm a career man myself. From what I had heard about these homosexual cases before I was scared."

In view of our finding of the existence of prejudicial error, the additionally granted issue is moot.

For the above-stated reasons the decision of the board of review is reversed. The findings and sentence are set aside and the case is remanded to The Judge Advocate General of the Navy. A rehearing may be ordered.

Judge FERGUSON concurs.

QUINN, Chief Judge (dissenting):

In United States v Mantooth, 6 USCMA 251, 257, 19 CMR 377, we indicated that in a case of this kind, "it is doubtless preferable that the import of the absence of complaint be left . . . to arguments of counsel solely, and not isolated by the law officer for the court's consideration." I would affirm the ruling of the law officer.

---

[1] The court supplied the emphasis to the above instruction and said that it "had no place in the instruction. However, the unquestioned testimony in the case was that the prosecutrix did not reveal her intimacy with the defendant until March or April 1956 [the crime allegedly occurred on or about June 20, 1955] so that the jury was bound to find that to be the fact and that beyond a reasonable doubt, so that in view of these facts the foregoing phrase was entirely harmless."