UNITED STATES, Appellee

v

THOMAS J. FLIPPEN, Airman Second Class,

U. S. Air Force, Appellant

16 USCMA 622, 37 CMR 242

No. 19,837

April 21, 1967

George W. Moser, Esquire, and Major Frank W. Lane, Jr., argued the cause for Appellant, Accused. With them on the brief was Colonel Joseph Buchta.

Lieutenant Colonel William F. Rutherford argued the cause for Appellee, United States. With him on the brief was Colonel Emanuel Lewis.

## Opinion of the Court

KILDAY, Judge:

Appellant was arraigned before a general court-martial convened at Carswell Air Force Base, Texas, charged with rape, in violation of Article 120, Uniform Code of Military Justice, 10 USC § 926. He pleaded not guilty but was found guilty as charged.

He was sentenced to a bad-conduct discharge, total forfeitures, confinement at hard labor for two years, and reduction to the grade of Airman Basic. The convening authority approved the sentence. A board of review in the office of the Judge Advocate General of the Air Force affirmed the finding of guilty and the sentence.

This Court granted review to consider the single issue:

"Whether the failure of the law officer to instruct on the absence of fresh complaint as it might affect the credibility of the alleged victim was plain error."

The evidence surrounding the offense charged, and giving rise to the above issue, shows in part that the purported victim was an unmarried, chaste, 19-year-old member of the Women's Army Corps Detachment stationed at Carswell Air Force Base. Her acquaintance with the accused began on June 16, 1966, for on that day they met while in pursuit of their individual duties. That afternoon she refused his request for a date. In no sense deterred, accused—accompanied by his roommate —drove to her barracks that same evening. Finally persuaded, she joined their company for pizza, after failing to obtain a date for accused's companion. It was agreed that afterward prosecutrix would be returned to her barracks forthwith. The roommate went no further than his own barracks. The prosecutrix and the accused drove to a pizza house some 10 to 15 miles distant. Hunger pangs satisfied, the two then began their return to the base. Appellant's first attempt to leave the main road was short-lived because of prosecutrix's protestations. On the second such occasion, he ignored her objections and parked "in a roadway area." Her frightened request to return to the base brought in reply, not only appellant's refusal, but also the warning that he could kill her with no one being aware. By way of demonstration, he seized the girl by the throat and though she scratched and tried to pull both his hand and his head she was reduced to a state of semi-consciousness.

Following this, he moved to the back seat of the car and with his hand still on her throat pulled the girl from the front to the back. There, he completely disrobed his companion and, in spite of her resistance, proceeded to carnally know her.

In time, the prosecutrix was permitted to dress, whereupon both re-turned to base. At the gate, accused stopped and spoke to a gate guard. The girl said nothing, being too upset to even remember the conversation.

Once in her barracks, the victim found her roommates asleep. Emotionally in a state of shock, she showered and went to bed. It was a few minutes after 3:00 a.m. Having finally "dozed off," she awakened the next morning and, totally without feeling, went through the "mechanical motions" of dressing and going to work. Debating whether or not to remain silent, she decided to discuss the affair that evening with one of her girl friends. Having made known her desires in this regard, she went to lunch accompanied by several associates. During lunch her friend mentioned the forthcoming meeting. With this, the prosecutrix began to cry, then half ran, half walked from the dining hall back to her room. Reaching some degree of calmness, she returned to work. After work, she met her friend but broke down and started crying. Her story was then related to those present.

Suffice it to say, accused conceded the sexual act involved, but denied the use of force saying the act was consensual.

Turning to the instructions given at the trial, the record reflects that the law officer covered the elements of the offense charged, accompanied by appropriate definitions. So, too, were the statutory instructions given as required by Article 51(c), Uniform Code of Military Justice, 10 USC § 851. Neither counsel requested, and no instruction was in fact given on the doctrine of fresh complaint or the lack thereof. The error before us is fashioned by this omission.

Counsel for the appellant advanced the belief that there is clear and compelling evidence of an absence of fresh complaint; that there is civilian precedent for giving a cautionary instruction in this area; that there is equally strong authority for the giving of similar instructions in the military sphere; and that failure of the law officer to so instruct the court, *sua sponte*, in this

**623**

case, as to the absence of fresh complaint, is plain error. Conceding that under the general rule an accused usually waives his right to a special instruction on a factual issue in the absence of a request by counsel, the defense proponents likened the need, in this case, to those cases requiring *sua sponte* instructions on affirmative defenses reasonably raised by the evidence. Failure to so instruct, the appellant contends, is considered "plain error," *i.e.*, error affecting the substantial rights of the accused.

Government counsel, to the contrary, see in this record of trial the presence of fresh complaint rather than its absence. Indeed, they contend, trial defense counsel subscribed to the same view in his approach to the factual aspects of the case. In any event, goes the argument, error has only been found by this Court in those cases where a requested defense instruction on the subject has been denied by the law officer. United States v Mantooth, 6 USCMA 251, 19 CMR 377; United States v Goodman, 13 USCMA 663, 33 CMR 195.

For the purpose of this appeal and in light of the issue granted, we assume, without more, that lack of fresh complaint is here raised—realizing full well each case must be decided on its own facts. Cf. United States v Washington, 2 USCMA 177, 7 CMR 53; United States v Henderson, 4 USCMA 268, 15 CMR 268; State v Dudley, 147 Iowa 645, 126 NW 812 (1910); State v Risen, 192 Or 557, 235 P2d 764 (1951). For that matter, "[t]he extent to which the failure to complain promptly should discredit the prosecutrix depends upon the circumstances of the case and the reasons for her failure." Underhill, A Treatise on the Law of Criminal Evidence, 5th ed, §§ 755 and 757. Of course, the fact of complaint may be introduced by the prosecutrix's own testimony in chief. Wigmore, Evidence, 3d ed, § 1136. Obviously, so may its absence be shown.

Indeed, as Government counsel note, reversal may follow the law officer's refusal to give a requested instruction

of this lineage. United States v Goodman, supra.

Generally speaking, in this instructional area, two fundamental concepts are at work. On the one hand, "[a]n accused is entitled to have presented instructions relating to any defense theory for which there is any foundation in the evidence. United States v O'Connor, 237 F2d 466, 474 (CA 2d Cir) (1956)." United States v Amie, 7 USCMA 514, 518, 22 CMR 304; United States v Sitren, 16 USCMA 321, 36 CMR 477. The application of this directive may be viewed in United States v Heims, 3 USCMA 418, 12 CMR 174, and United States v Amie, supra. In both instances the presence of physical incapacities was raised by the evidence, hence a *sua sponte* instruction thereon was required. The same is true where "impossibility" of performance exists. United States v Pinkston, 6 USCMA 700, 21 CMR 22. If the theory of self-defense is raised by the evidence, *sua sponte* instructions are similarly called for. United States v Ginn, 1 USCMA 453, 4 CMR 45; United States v Sitren, supra. The same doctrine applies to the question of "accident." Coleman v State, 208 Ga 511, 67 SE2d 578 (1951). Because intoxication may as a matter of defense negate specific intent, it, too, in a proper case, demands the attention of a *sua sponte* instruction. United States v Miller, 2 USCMA 194, 7 CMR 70; United States v Oisten, 13 USCMA 656, 33 CMR 188; United States v Nickoson, 15 USCMA 340, 35 CMR 312. As for the defense of "mistake," the reader is directed to United States v Ebarb, 12 USCMA 715, 31 CMR 301. Insanity is also an affirmative defense requiring identical treatment. United States v Mathis, 15 USCMA 130, 35 CMR 102. Moreover, from this Court's very inception, we have treated the law officer as bearing the primary burden of instructing *sua sponte* on all lesser included offenses raised by the evidence. United States v Clark, 1 USCMA 201, 2 CMR 107; United States v Wilson, 7 USCMA 713, 23 CMR 177; United States v Bellamy, 15 USCMA 617, 36 CMR 115.

If, then, in the case before us, we were troubled by the presence of an

624

affirmative defense, not covered by an instruction, we would need look only to these opinions for help. But, such is not the case. People v Wade, 1 West's Cal Rptr 683, 348 P2d 116 (1959), at page 124, pinpoints the difficulty with these words:

". . . In determining what instructions a trial court is required to give without request, the rule is usually stated to be that the court has a duty to give instructions on the general principles of law governing the case, even though not requested by the parties, but it need not instruct on specific points developed at the trial unless requested. People v Warren, 16 Cal 2d 103, 117, 104 P2d 1024."

Thus, we are in truth here confronted with an entirely different inquiry; one that brings into play the application of yet another rule—" 'the absence of a request for special instructions precludes consideration upon appeal. Caminetti v United States, 242 US 470, 61 L ed 442, 37 S Ct 192.' " United States v Lell, 16 USCMA 161, 165, 36 CMR 317. Assuredly, an instruction as ▆▆▆▆▆ ▆ to the lack of fresh complaint falls within the category of "special instructions" so as to normally preclude its consideration upon appeal in the absence of a defense request. Cf. Manual for Courts-Martial, United States, 1951, paragraph 142c; United States v Goodman, supra. Recognition of this rule is to be found in United States v Bigger, 2 USCMA 297, 8 CMR 97, where "alibi" was a matter of concern.

Factual differences in individual cases, however, ofttimes induce courts to restrict the rule's general application. Thus, in United States v Moore, 15 USCMA 345, 35 CMR 317, we instead applied the concept of "plain error" when an instruction on alibi was omitted though the law officer indicated an intention to give such an instruction to the satisfaction of defense. In that case, accused's identity and presence at the scene of the crime charged were critical questions.

This same set of circumstances arose in United States v Cooper, 15 USCMA 322, 35 CMR 294. There, the law officer, pursuant to a defense request, indicated an intention to instruct on character evidence but did not do so. We rejected the argument that under those facts the general rule applied.

Accomplice testimony falls within the same sphere. Though the announced rule is generally available, we have in two instances found "plain error" justifying appellate consideration. In United States v Stephen, 15 USCMA 314, 35 CMR 286, had the accomplice, who was the only prosecution witness, been disbelieved, acquittal would have followed. Special instructions on accomplice testimony were thus vital. Absent such instructions, the court could not possibly have considered his testimony in the proper light.

Likewise, in United States v Lell, supra, the same rationale was applied for the accomplice testimony there was the only evidence showing, first, the prearranged plan of theft and, second, that accused knew the stolen character of the property delivered to him.

What then of the present case? Do its facts call for the application of the "plain error" rule? ▆▆▆▆▆ ▆ We think not. The reasons are several. To begin with, the testimony of the prosecutrix is precise, complete, and credible. Moreover, she is amply corroborated by the testimony of other witnesses. By the same token, the instructions given in this case are complete in every sense. Not only is every element of the offense charged set out, but additional instructions emphasize the important questions of force and the want of consent. As given, the instructions required the court's consideration of both. Counsel, in turn, treated "fresh complaint," or its lack, as simply a part of the whole query. Neither saw a need for added advice. For this reason, no doubt, they made no request of the law officer. The instructions given provided adequate coverage. Under these circumstances, we see no possibility of harm coming to this accused simply because he was

not afforded a *sua sponte* instruction in this specific area. Its value would, at best, be questionable. Here, then, there is no call to invoke the "doctrine of plain error" for the appellant has suffered no harm.

The decision of the board of review is affirmed.

Chief Judge QUINN and Judge FERGUSON concur.