UNITED STATES, Appellee,

v.

Glenn T. HARRIS, Private, U.S. Army, Appellant.

No. 31,481.

CM 432368.

U. S. Court of Military Appeals.

Nov. 13, 1979.

For Appellant: *Captain Anthony J. Siano* (argued); *Captain John R. Osgood* (on brief); *Colonel Alton H. Harvey, Captain Paul E. Hemmer, Captain Willard E. Nyman, III, Captain Robert L. Gallaway.*

For Appellee: *Captain Clement L. Hyland* (argued); *Lieutenant Colonel Donald*

W. Hansen, Major John T. Sherwood, Jr., Captain Gary F. Thorne (on brief); Captain John R. Erck, Captain Nancy Giorno.

*Opinion*

COOK, Judge:

■ Article 125, Uniform Code of Military Justice, 10 U.S.C. § 925, prohibits "unnatural carnal copulation with another person of the same or opposite sex." In *United States v. Scoby*, 5 M.J. 160, 163 (C.M.A. 1978), the Court determined that the article was sufficiently certain in meaning to satisfy the constitutional requirement of fair notice of punishable conduct. That determination disposes of accused's first challenge of his conviction for a violation of the article. Two issues remain:

(1) That the sexual act performed by the accused is not conduct proscribed by Article 125; and,

(2) That if his conduct is within the scope of Article 125, the evidence is insufficient to prove an essential element, specifically that described as "penetration."

I. *THE SCOPE OF ARTICLE 125.*

■ Article 125 does not specify particular acts as "unnatural carnal copulation." The act performed by the accused is known commonly as "cunnilingus," which is the sexual connection of the female organ with the mouth of another person. Black's Law Dictionary 456 (rev. 4th. ed. 1968). The accused contends the article was intended to prohibit only common-law sodomy, which, he maintains, requires involvement of the male sex organ. *See* 2 Wharton's Crim. Law and Proc. §§ 751, 752 (1957). In construing state statutes worded like Article 125, a number of American courts have rejected a similar contention. In *Rose v. Locke,* 423 U.S. 48, 96 S.Ct. 243, 46 L.Ed.2d 185 (1975), for example, which is cited in the principal opinion in *United States v. Scoby, supra* at 162–3, the United States Supreme Court commented on its rejection of a constitutional challenge to a decision by the Tennessee Supreme Court, holding that cunnilingus was prohibited by a state statute which proscribed "crime[s] against

nature." More importantly, the accused's contention was rejected by Army court-martial authorities.

Before 1920, "sodomy and other unnatural crimes" were prosecuted as offenses in violation of Article of War 96, and all carried the same maximum punishment. Act of Aug. 29, 1916 (39 Stat. 619); Manual for Courts-Martial, U.S. Army, 1917, Table of Maximum Punishments, at 166, and Appendix 4, Specification Form 168 at 352. Paragraph 443 of the 1917 *Manual* described sodomy as "sexual connection with any brute animal, or in sexual connection, per anum, by a man with any man or woman"; but it also declared: "Penetration of the mouth of the person constitutes this offense." *Id.* at 271. In 1920, the Articles of War were revised and Article of War 93 specifically listed "sodomy" as a punishable offense. Act of June 4, 1920 (41 Stat. 812); Manual for Courts-Martial, U.S. Army, 1921, para. 443 at 439. This single word declaration of the offense remained unchanged until enactment of the Uniform Code in 1950. During the intervening period, an Army Board of Review espoused the same limited view of the scope of the military offense as is now urged upon the Court by the accused. *United States v. O'Neal,* 51 B.R. 385 (1945). That construction of Article of War 93 was repudiated by the Judge Advocate General of the Army. In material part, he said:

Examination of a large number of authorities discloses a high degree of uncertainty as to exactly what forms of sex perversion constitute common law sodomy. There is no Federal or District of Columbia decision throwing any light on the question. However, the Manual for Courts-Martial declares that sodomy "consists of sexual connection with any brute animal, or in sexual connection, by rectum or by mouth, by a man with a human being" (MCM, 1928, p. 177). Substantially the same definition has been in effect since the publication of the 1917 Manual for Courts-Martial as corrected to 1 August 1918.

There is nothing in the foregoing definition indicative of an intent to limit the offense to any particular types of sexual connection and this office has held on a number of occasions that *cunnilingus* comes within the scope of the offense under consideration. Such an interpretation is entirely proper in view of the confused state of the civil cases and the nature of the act of *cunnilingus.* Connection between the tongue of the male and the sexual organ of the female is no less a sexual connection than one between the male organ and the mouth of the female. The two acts are equally revolting and merit the same type of punishment and confinement. In the absence of controlling authority or Congressional expression to the contrary, it is my opinion that the definition contained in the Manual for Courts-Martial and the settled policy of this office should govern and that the act involved in the present case amounts to common law sodomy.

*Id.* at 397.

Pursuant to Article of War 50½, Manual for Courts-Martial, U.S. Army, 1928 the Secretary of War approved the opinion of the Judge Advocate General. Thereafter, the opinion was cited with approval in *United States v. Manuel,* 59 B.R. 197, 205 (1946), and *United States v. Mullarkey,* 77 B.R. 247, 255 (1948). It was unchallenged until 1952, when an Air Force Board of Review, acting on a case involving conduct before the effective date of the Uniform Code and, therefore, alleged as a violation of the Articles of War, concluded that cunnilingus was punishable as a violation of Article of War 96, but was not "sodomy" within the meaning of Article of War 93. *United States v. Barnes,* 2 C.M.R. 797 (A.F.B.R. 1952). As that decision came after enactment of the Uniform Code, the *O'Neal* decision must be regarded as the established Army construction of the scope of Article of War 93 immediately before the Code.

A rule of statutory construction posits that re-enactment of an existing statute without change implies legislative approval of the construction accorded the predecessor

statute by those charged with its enforcement. *United States v. Scheunemann,* 14 U.S.C.M.A. 479, 482–3, 34 C.M.R. 259, 262–3 (1964); *see also United States v. Dean,* 7 U.S.C.M.A. 721, 725, 23 C.M.R. 185, 189 (1957). We are not dealing, however, with an unchanged statute. The language of Article 125 is different from that of Article of War 93. While the article is titled "sodomy," unlike Article of War 93, it broadly describes the kinds of sexual acts comprehended by the title. The description calls to mind sexual couplings that do not involve the use of the male sex organ. Thus, it would appear that the purpose of the change in language was to express a legislative intention to define sodomy as including acts other than those within the scope of its common-law definition.

One respected criminal law text indicates that common-law sodomy is "copulation 'per anum.'" 2 Wharton's *supra,* § 751 at 571. As noted in our quotation from the Army's 1917 Manual, sodomy as regards humans was described as "sexual connection, per anum," although the *Manual* went on to observe that "[p]enetration of the mouth" also "constitutes this offense." Naval Courts and Boards, 1937, Sec. 108, described sodomy as consisting, "[i]n its narrower sense," of "carnal copulation between human beings per anum," but it perceived the military offense, which was punished as an offense not specified, in violation of Article 22, Articles for the Government of the Navy (A.G.N.), as including sexual connection with an animal, or bestiality. In *Scoby,* the Court's review of the military precedents in regard to sexual connection *per os* (fellatio), and their impact upon the Uniform Code, convinced it that such act was within the scope of Article 125. Review of the hearings on the Uniform Code and the reports to the Congress by the Committees on Armed Services of the House of Representatives and the Senate impel the conclusion that cunnilingus is also included within the prohibition of the article.

A working draft of the bill presented to a subcommittee of each Committee on Armed

Services[1] had two annotations to the text of proposed Article 125. One annotation was captioned "*References*"; the other was titled, "*Commentary.*" The references were to Article of War 93, Article 9(39) of the proposed Articles for the Government of the Navy, and Naval Courts and Boards, Sec. 108 (1937). The "*Commentary*" read: "This article covers the same elements as the Army and Navy definition of the offense." *See* Hearings Before a Subcommittee of the House Committee on Armed Services, 81st Cong., 1st Sess., on H.R. 2498, p. 1233 (1949). Mr. Felix E. Larkin, Executive Secretary to the committee appointed by Secretary of Defense James Forrestal to develop the Uniform Code, and Chairman of the committee's working group, provided additional details as to the general intention of the draftsmen regarding the punitive articles of the Code. He testified that the committee's study of the punitive articles of the Articles of War and the Articles for the Government of the Navy disclosed differences and that "most of the . . . civil types of crimes were not defined," but where there were "definitions as spelled out in the respective [service] manuals," there were also differences. Hearings, *supra* at 1237–8. The committee, therefore, "started from scratch." In its recommendation, the committee considered the definitions commonly used by the services, but, in view of their differences and the purpose to provide punitive articles for all the services, the committee adopted "whatever ideas . . . [it] felt were worth-while from some of the more modern State codes." *Id.* at 1238. Abbreviated, but substantially similar, testimony was given by Professor E. M. Morgan, who was the Chairman of the committee appointed by Secretary Forrestal. Professor Morgan repeated to the Senate Subcommittee Mr. Larkin's representation that his committee had "tried to bring . . . [the punitive articles] into line with modern notions." Hearings Before a Subcommittee of the Senate Committee on Armed Serv-

ices, 81st Cong., 1st Sess., on S. 857 and H.R. 4080, at 47 (1949).

No separate consideration of the acts perceived to be within the scope of Article 125 appears in the congressional hearings. Both the House and Senate Committees on Armed Services recommended approval of Article 125, as proposed. In explaining the punitive articles as a whole, their respective reports embodied the substance of the draftsmen's annotations to the original bill and the testimony by Professor Morgan and Mr. Larkin. In identical language, each advised as follows:

> The punitive articles in the proposed code are contained in articles 77–134. In the preparation of the proposed code, it was noted that there were some differences in the punitive articles as defined in the Articles of War as contrasted to the same or similar offenses as defined in the Articles for the Government of the Navy. Generally speaking, the Articles of War define the so-called military offenses. The Articles for the Government of the Navy likewise define most of the military offenses, but in neither case were all of the offenses defined. It is also true that some crimes are peculiar to one service and are not provided for in the other. Most of the civil types of crimes are not defined in existing military law and there are some differences in the crimes which are defined. The civil types of crimes in the Articles of War, as defined by the Manual, are generally based on the common-law definition of the State of Maryland which, as a matter of fact, is very close to Federal definitions of the same offenses. Comparable crimes are enumerated in the Articles for the Government of the Navy but are not therein defined. However, Naval Courts and Boards, which defines the crimes, generally follows the Federal statutory definitions. All of these differences have been reconciled in writing the punitive articles of this code.

---

1. The material was introduced before the Subcommittee of the Senate Committee on Armed Services by way of "[p]rinted slip copies of the [House Committee] hearings." Hearings Be-

fore a Subcommittee of the Senate Committee on Armed Services, 81st Cong., 1st Sess., on S. 857 and H.R. 4080, at 32 (1949).

House Report No. 491 on H.R. 4080, 81st Cong., 1st Sess., p. 35 (1949); Senate Report No. 486 on H.R. 4080, 81st Cong., 1st Sess., p. 32 (1949).

Examination of the committee reports discloses that both regarded three sources as relevant to determination of the scope of a punitive article of the Uniform Code. These sources are: (1) The general federal criminal law; (2) the definition of the offense in the State of Maryland; and, (3) the definition provided by the "*Manual.*" The general federal penal code, Title 18, United States Code, contains no prohibition against conduct described either as "unnatural carnal copulation" or "sodomy." Under the Assimilative Crimes Statute, 18 U.S.C. § 13, conduct on a military base that is within the "special maritime and territorial jurisdiction of the United States" [18 U.S.C. § 7] which violates the law of the state in which the base is situated is a federal offense triable by court-martial. In that instance, the scope of the state statute controls. *United States v. Rowe,* 13 U.S.C.M.A. 302, 32 C.M.R. 302 (1962). However, where there is, as here, a specific article of the Uniform Code proscribing the same conduct, the meaning and scope of the military statute must be determined by the intention of Congress, insofar as the intention is ascertainable. As this Court remarked in *United States v. Sicley,* 6 U.S.C.M.A. 402, 409, 20 C.M.R. 118, 125 (1955):

> [W]e are wholly free from amenability to . . . [state court] precedents, and experience no slightest hesitation in resolving the present problem [of construction of an article of the Uniform Code] in accordance with Congressional intent . . . regardless of civilian case law to the contrary.

*See also United States v. Hicks,* 6 U.S.C. M.A. 621, 20 C.M.R. 337 (1956).

Although not part of the general federal penal law, the criminal law of the District of Columbia is a common and long-used source for definition of misconduct proscribed as a military offense. For example, in 1920, in amending the Articles of War, Congress listed, for the first time, a number of offenses, including sodomy, as specific military delicts. A new Manual for Courts-Martial for the Army was then promulgated. As to several of the newly-specified offenses, the *Manual* observed that, as these were not defined by the Federal Penal Code, the respective definitions were determinable by the law of the District of Columbia. *See* para. 443, 1921 *Manual, supra* at 420 (housebreaking); at 430 (embezzlement); and at 436 (forgery). Sodomy, the *Manual* noted, was defined in "[n]either the Federal Penal Code nor the Code of the District of Columbia," and, therefore, the military courts were "governed by the common-law definition of this offense." *Id.* at 439.

What the definition of common-law sodomy in 1921 was need not give us pause. The observations here are only to illustrate the practice of looking to the criminal law of the District of Columbia, as law enacted by Congress, to determine the probable legislative intent as regards a similarly worded statutory provision in the military. Thus, in considering whether cunnilingus was within the scope of the military offense, the Judge Advocate General of the Army in *United States v. O'Neal, supra* at 397, looked to District of Columbia decisions to determine whether they cast "any light on the question." This Court made like inquiry for the same purpose in a similar situation. *United States v. Brown,* 3 U.S.C. M.A. 454, 456, 13 C.M.R. 10, 12 (1953). The report of the Committees on Armed Services of each branch of Congress, in effect, posits the same procedure.

As noted earlier, those congressional reports refer to the law of the State of Maryland as a source for definition of various acts prohibited by the Uniform Code. It might seem strange to one unfamiliar with the special relationship between the law of that state and the law of the District of Columbia, that the Committees on Armed Services should single out the criminal law of a particular state as a source for congressional intention as to military offenses. The explanation is that, by direction of Congress, questions of common-law arising

in the District of Columbia are resolved with special consideration to the law of the State of Maryland. 49 D.C.Code § 301 (1973); *White v. Parnell*, 130 U.S.App.D.C. 148, 397 F.2d 709, 710 n. 1 (D.C.Cir. 1968). We construe the reference in the reports to the law of Maryland as identifying, consistent with established military practice, the law of the District of Columbia as a source for congressional intention in regard to punitive articles of the Uniform Code. It is also consistent with the testimony at the congressional hearings that the Code articles represented a synthesis of previous military law and "modern notions" as to specific offenses. We turn, therefore, to the law of the District of Columbia at the time of the committee reports on the bill enacted as the Uniform Code.

Section 22–3502, District of Columbia Code, is, like Article 125 of the Uniform Code, titled "Sodomy." In material part, it reads as follows:

(a) Every person who shall be convicted of taking into his or her mouth or anus the sexual organ of any other person or animal, or who shall be convicted of placing his or her sexual organ in the mouth or anus of any other person or animal, or who shall be convicted of having carnal copulation in an opening of the body except sexual parts with another person, shall be fined not more than $1,000 or be imprisoned for a period not exceeding ten years

.     .     .     .     .

(b) Any penetration, however slight, is sufficient to complete the crime specified in this section. Proof of emission shall not be necessary.

The District of Columbia provision was enacted on June 9, 1948, 62 Stat. 347. The language was derived from, and paralleled that of former Section 578, Article 27, of the Maryland Code.[2] U.S.Code Cong.Serv., 80th Cong., 2d Sess. at 1714, 1717 (1948). *See also Weldon v. United States*, 87 U.S. App.D.C. 113, 183 F.2d 832, 834 (D.C.Cir. 1950). Maryland's highest court has held that its statute evinces "a clear legislative intention to cover the whole field of unnatural and perverted sexual practices." *Blake v. State*, 210 Md. 459, 124 A.2d 273, 274 (1956). In essence, the District of Columbia Court of Appeals reached the same conclusion as to the District's statute by holding that cunnilingus is included within its scope. *United States v. Cozart*, 321 A.2d 342, 343 (1974).

Considering the relationship between the District of Columbia law and that of an identically-titled offense under the Uniform Code invites the conclusion that the general proscription of Article 125 against "unnatural carnal copulation" contemplated the explicit sex acts enumerated in the D.C. statute. The draftsmen of the Manual for Courts-Martial, United States, 1951, in fact, reached that conclusion. The conferees who proposed the final draft of the *Manual* material relating to Article 125 expressly referred to section 22–3502 of the District Code as illustrating "acts which constitute unnatural carnal copulation." Legal & Legislative Basis, Manual for Courts-Martial, United States, 1951, p. 281.

Earlier, it was noted that the committee reports on the Uniform Code intended that the District of Columbia criminal law illumine the intention of Congress as to the definition of a similarly-described offense in the Code. The third source, the "Manual," to which the reports refer, also emphasizes the linkage between the District of Columbia criminal law and the military punitive articles, along with the purpose of the Mor-

2. The current provision, which is a reenactment of the earlier law, is Section 554, Article 27, Annotated Code of Maryland (1957, 1976 Repl. Vol.). The offense is titled "Sodomy generally," and Section 554 is captioned "Unnatural or Perverted Sexual Practices." The latter reads, in pertinent part:

Every person who shall be convicted of taking into his or her mouth the sexual organ of any other person or animal, or who shall be convicted of placing his or her sexual organ in the mouth of any other person or animal, or who shall be convicted of committing any other unnatural or perverted sexual practice with any other person or animal, shall be fined not more than one thousand dollars . . . or be imprisoned . . . not exceeding ten years . . .

**58**

gan committee to incorporate "modern notions" of specified offenses. We turn, therefore, to this third source.

Unquestionably, the Manual mentioned in the committee reports was the then current Manual used in the Army. Paragraph 180*j* of the 1949 Manual, *supra,*[3] said:

Sodomy consists of a person taking into his or her mouth or anus the sexual organ of any other person or animal or placing his or her sexual organ in the mouth or anus of any other person or animal. Any penetration, however slight, is sufficient to complete the crime of sodomy.

*Id.* at 244. The operative words of the Manual provision are identical to those proscribing the first two acts enumerated in Section 22–3502(a) of the District of Columbia Code, which, as pointed out earlier, had been enacted less than a year previous to the hearings on the military code. The 1949 Manual's definition of sodomy, therefore, leaves no doubt that cunnilingus was within its scope.

As the *"Commentary"* of the draftsmen of the original proposed bill included reference to the Navy's view of sodomy, some comment on that service's approach is appropriate. In the Navy, sodomy was defined as "the carnal copulation by human beings with each other against nature or with a beast" and penetration was stated to be a "necessary element." Naval Courts and Boards, § 108 at 100 (1937). At that time, it was charged as a violation of Article 22, A.G.N. The model specification forms did not explicitly indicate that the male sex organ was required to commit the offense (*id.,* specifications 1–3), but that may have been intended as other model specifications for an offense described as "oral coition" alleged involvement of the male organ (*see* Model Specifications 15–18 at 34–35) and were charged as scandalous conduct, in violation of Article 8, A.G.N. None of these model specifications referred to an act that did not involve the male organ. It is, however, unnecessary to determine the scope of the Navy's view of

sodomy under its former articles. The congressional reports indicate that "in writing the punitive articles" of the Uniform Code, the Committees on Armed Services had "reconciled" differences in service definitions. H.R.Rep.No.491, *supra* at 35. From the situation that prevailed in the Navy at the time of the congressional hearings on the Code, it was clear that the Navy proposed to prohibit sodomy and every "unnatural sexual act" as a single, comprehensive offense.

About a year before the 81st Congress took up the Uniform Code, bills had been introduced in the 80th Congress to amend the Articles for the Government of the Navy. H.R.No.3687 and S. 1338, 80th Cong., 1st Sess. (1947). Proposed Article 9(39), Articles for the Government of the Navy, which the Morgan committee annotated as one of the references for Article 125 of the Code, provided, in pertinent part, as follows:

Art. 9. Such punishment, other than death, as a court-martial may adjudge may be inflicted upon any person subject to the Articles for the Government of the Navy—

. . . . .

Thirty-ninth. Or is guilty of . . . sodomy or any other unnatural sexual act . . . .

The language of the proposed amendment is as comprehensive as that set out in Article 125. Unquestionably, its sweep is sufficient to include cunnilingus.

From the standpoint of the language of Article 125 and its legislative history, the inescapable conclusion is that cunnilingus is an act punishable under the article.

One further matter remains to be considered. The accused would have us construe Article 125 to require that the element of penetration be satisfied only by the male sex organ. Acceptance of that contention would make the statute inapplicable to sexual connection between women. *See Warner v. State,* 489 P.2d 526 (Okl.Cr.App.

---

**3.** With some modification, this Manual was adopted by the Air Force when that service

became a separate force. *See* Manual for Courts-Martial, U.S. Air Forces, 1949, VII.

1971). That result would raise a very serious question as to whether the statute violates the constitutional requirement of equal protection under the law for all persons, male or female.

■ Not every difference of treatment by the Government of individuals or groups of persons violates the right to equal protection, but a difference in treatment based upon sex is "inherently suspect." *Frontiero v. Richardson,* 411 U.S. 677, 682, 93 S.Ct. 1764, 36 L.Ed.2d 563 (1973).

■■ In *United States v. Goodman,* 13 U.S.C.M.A. 663, 33 C.M.R. 195 (1963), this Court had to decide a question as to the admissibility of evidence of fresh complaint in a case in which a male had been sexually assaulted by another male. Noting that the accused's argument in favor of exclusion of the evidence would create a distinction in admissibility dependent upon the sex of the victim, the Court said:

> [W]e are certain that there cannot be one rule for women and a contrary rule for men.

*Id.* at 667. The constitutional issue need not be considered on the merits, but the fact that it would arise as a result of adoption of accused's contention reminds us that a court should, if consistent with the language of a statute, adopt a construction of it that is reasonable and raises no doubt as to its constitutionality, over a construction that renders the statute constitutionally suspect. What we have said about the legislative and historical background of Article 125 acknowledges no difference in treatment predicated upon sex. The Maryland statute and the District of Columbia statute derived from it also make no such distinction. The Court of Special Appeals of Maryland expressly rejected a contention that only the male sex organ could qualify as the instrument for effecting penetration in a sexual act. *Edmonds v. State,* 18 Md. App. 55, 305 A.2d 205 (1973). Rejection of the contention is implicit in the determination by the District of Columbia Court of Appeals that cunnilingus is prohibited by the District's statute. *United States v. Cozart, supra.* We hold, therefore, that the penetration involved in the acts proscribed by Article 125 need not be only by the male sex organ.

## II. *SUFFICIENCY OF THE EVIDENCE.*

In his last assignment of error, the accused contends that the findings of guilty are legally unsupportable because there is no credible evidence of penetration, which is required "to complete the offense." Para. 204, Manual for Courts-Martial, United States, 1969 (Revised edition). In his own testimony, the accused denied he had penetrated the sexual organ of the girl involved with him in the act but admitted he did not know if his mouth came "in contact" with it. In a letter sent to the girl, which was admitted into evidence, he noted that, as he was charged with sodomy, she "must have told someone that . . . [he] preformed [sic] a cunninglingus [sic] on" her. He then went on: "I did that for you Frankie . . . .. The initial intercourse wouldn't have been worth nothing if I hadn't done that." The girl testified that penetration had been accomplished.

■ Appellate defense counsel contend that, as the trial judge had found the accused not guilty of effecting the act by force and without consent, as alleged in the specification, the girl's credibility was so undermined that the part of her testimony crucial to the issue is insufficient to establish penetration beyond a reasonable doubt. However, the factfinders may believe one part of a witness' testimony and disbelieve another. The testimony of the witness on this point is not only straightforward and consistent, but is corroborated by the accused's letter. We cannot say, therefore, that, as a matter of law, it is so insubstantial as to preclude a finding of penetration.

The decision of the United States Army Court of Military Review is affirmed.

FLETCHER, Chief Judge (concurring in the result):

I agree with Judge Cook's opinion to the extent indicated below.

**60**

The question before this Court is whether conduct denominated as "cunnilingus" is criminally proscribed by Article 125, Uniform Code of Military Justice, 10 U.S.C. § 925. *See Rose v. Locke,* 423 U.S. 48, 96 S.Ct. 243, 46 L.Ed.2d 185 (1975); *United States v. Scoby,* 5 M.J. 160, 166 (C.M.A. 1978). The language of this federal statute is as follows:

§ 925. Art. 125. Sodomy

(a) Any person subject to this chapter who engages in unnatural carnal copulation with another person of the same or opposite sex or with an animal is guilty of sodomy. Penetration, however slight, is sufficient to complete the offense.

(b) Any person found guilty of sodomy shall be punished as a court-martial may direct.

It does not contain the word "cunnilingus" nor as a matter of common law was this sexual aberration traditionally included within the common-law definition of sodomy. *See United States v. Barnes,* 2 C.M.R. 797 (A.F.B.R.1952); *Note Criminal Law—Sexual Offenses—Sodomy—Cunnilingus,* 8 Natural Resources Journal 531 (1968). Nevertheless, a strict construction of this penal statute in the appellant's favor should not be permitted to defeat the purpose and public policy of Congress in enacting this particular statute. *See Sands, Sutherland Statutory Construction,* § 59:06 (4th ed. 1974). Accordingly, it is incumbent upon this Court to discern whether Congress intended the entire language of this codal provision to cover the charged conduct in the present case. *See United States v. Kick,* 7 M.J. 82 (C.M.A.1979).

The legislative history of Article 125 indicates that this criminal prohibition was intended to include "the same elements as the Army and Navy definition of this offense." *See* Hearings Before a Subcommittee of the House Committee on Armed Services, 81st Cong., 1st Sess., on H.R. 2498, p. 1233 (1949). As a matter of military law for the Army, sodomy as prohibited by Article of War 93 was broadly interpreted to include more than its traditional meaning at common law as carnal copulation per annos.[1] As noted in Judge Cook's opinion, the Navy in its proposed Article 9(39), Articles for the Government of the Navy, treated sodomy in conjunction with any other unnatural sexual act. Finally, as a matter of Army decisional case law,[2] as it was prior to the enactment of the Uniform Code, cunnilingus was included within the term sodomy as punishable by Article of War 93. In light of these factors, I agree with Judge Cook's determination[3] that the charged conduct in the appellant's case was intended by Congress to be within the scope and language of Article 125. *See United States v. Kick, supra.*

As to the resolution of the other issues in this case, I agree with their resolution in the lead opinion and vote to affirm the appellant's conviction.

PERRY,* Judge (dissenting):

The appellant was convicted by a general court-martial of sodomy and possession of marihuana, in violation of Articles 125 and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 925 and 934, respectively. He was sentenced to a bad-conduct discharge, total forfeitures of pay and allowances and imprisonment for one year. The United States Army Court of Military Review has affirmed. We granted review of the conviction of sodomy to consider the appel-

---

1. *See* para. 180*j,* Manual for Courts-Martial, United States Army, 1949; para. 149*k,* Manual for Courts-Martial, United States Army, 1928; para. 443(XI), Manual for Courts-Martial, United States Army, 1921.

2. *See United States v. Mullarkey,* 77 B.R. 247, 255 (1948); *United States v. Manuel,* 59 B.R. 197, 205 (1946); *United States v. O'Neal,* 51 B.R. 385 (1945).

3. *See also, United States v. Farrell,* 18 C.M.R. 680 (A.F.B.R.1954); *United States v. Radford,* 17 C.M.R. 595 (A.F.B.R.1954); *United States v. Brown,* 13 C.M.R. 731 (A.F.B.R.1953); *United States v. Hoffman,* 7 C.M.R. 157 (A.B.R.1952).

* Judge Matthew J. Perry took final action in this case prior to his resignation as a judge of this Court pursuant to his appointment and confirmation as a United States District Judge for the District of South Carolina.

lant's contention, *inter alia,* that on the evidence presented, he committed no violation of Article 125. Review of the record of trial has led me to agree with that contention, and I would reverse the conviction of sodomy.

The record reveals that on the occasion which precipitated the charge, the appellant met and became friendly with a female at the Non-Commissioned Officer's Club at Fort Gordon, Georgia. They left the club together in the appellant's automobile, and, after making a stop at a barracks building, the appellant drove to a wooded area and parked. The parties thereupon engaged in sexual relations. According to testimony by the woman, the appellant initially engaged in "regular sex," after which he performed an act of cunnilingus. It is this later conduct which led to the conviction of sodomy.

The appellant contends that for several reasons the conviction must be reversed. However, I deem it necessary to rule only upon the azygous contention that his conduct did not constitute a violation of the statute.

Article 125(a) prohibits "unnatural carnal copulation with another person of the same or opposite sex or with an animal" and delineates such conduct as "sodomy." While the statute contains no definition of "unnatural carnal copulation," its reach is circumscribed by the prescription that "[p]enetration, however slight, is sufficient to complete the offense." It is axiomatic that we must construe the statute so as to effectuate the intent of Congress. *See Philbrook v. Glodgett,* 421 U.S. 707, 713, 95 S.Ct. 1893, 44 L.Ed.2d 525 (1975); *National Railroad Passenger Corp. v. National Association of Railroad Passengers,* 414 U.S. 453, 458, 94 S.Ct. 690, 38 L.Ed.2d 646 (1974); *City of New York v. Train,* 161 U.S.App. D.C. 114, 494 F.2d 1033 (D.C.Cir. 1974), *aff'd,* 420 U.S. 35, 95 S.Ct. 839, 43 L.Ed.2d 1 (1975). Where the legislative purpose is unclear, the intent of Congress must be primarily determined from the language of the entire statute. *See Flora v. United States,* 357 U.S. 63, 78 S.Ct. 1079, 2 L.Ed.2d 1165 (1958); *Browder v. United States,* 312 U.S. 335, 61 S.Ct. 599, 85 L.Ed. 862 (1941). Moreover, it is a familiar rule of statutory construction that words and phrases that have well defined meanings at common law are interpreted to have the same meaning when used in statutes dealing with the same or cognate subject matter as that with which they were associated at common law. *Gilbert v. United States,* 370 U.S. 650, 82 S.Ct. 1399, 8 L.Ed.2d 750 (1962).

The offense of sodomy at common law included only acts constituting copulation per anum between humans and animals. *Rose v. Locke,* 423 U.S. 48, 53, 96 S.Ct. 243, 246, 46 L.Ed.2d 185 (1975) (Brennen, J., dissenting). "American jurisdictions, however, expanded the term—some broadly and some narrowly—to include other sexual 'aberrations.'" *Id.* Indeed, Courts of some states have interpreted their sodomy statutes to include cunnilingus. *See* Note, *Criminal Law—Sexual Offenses—Sodomy —Cunnilingus,* 8 Natural Resources Journal 531 (1968). This modern development has apparently occurred because of the words and phrases which have been utilized in statutes proscribing the offense. There is agreement among early writers, however, that the offense of sodomy at common law stems from the use of the sexual organ of the male. *Id.* "[A]t common law . . . where *penetration* was a necessary element of the offense of sodomy . . ." the phrase "'carnal copulation' ha[d] reference only to the insertion of the male genital organ into an orifice of the human body except the vaginal opening of the female. (Wharton's Criminal Law, 12th ed., Vol 1, Sodomy, sections 754–766; *Russell* on *Crimes* (Ross), Vol. 1, 9th ed., Sodomy and Cognate Offenses, pp. 651–652; Burdick, *Law of Crime,* Vol. III, Sodomy, sections 876–880." *United States v. Barnes,* 2 C.M.R. 797, 800 (A.F.B.R.1952). Moreover, Article 125 has the added statutory requirement of penetration. It is thus clear on the face of the statute that the *sine qua non* to conviction is the act of "penetration."

The term "penetration," as used in criminal law, denotes in sexual offenses "the

insertion of the male part into the female parts to however slight an extent; and by which insertion the offense is complete without proof of emission." Black's Law Dictionary 1291 (rev. 4th ed. 1968). At common law, the "penetration" which was necessary to complete the offense of sodomy "is the same that is required in the case of rape." *Russell on Crimes*, Vol. I (1845) at 698. In *People v. Smith*, 258 Ill. 502, 101 N.E. 957 (1913), the Illinois Supreme Court observed that the act of "penetration" which was required at common law before an act of sodomy was committed referred to the use of the male sex organ alone. The Georgia Supreme Court also has confirmed the meaning that has historically attached to the use of the term: "Penetration . . . means insertion of the virile organ into the mouth or rectum and contemplates the insertion of the . . . virile end of the organ." *Rozar v. State*, 93 Ga.App. 207, 91 S.E.2d 131, 132–3 (1956). *See also Washington v. Rodriguez*, 82 N.M. 428, 483 P.2d 309 (1971); *Burford v. State*, 413 S.W.2d 670 (Ark.1967); *People v. Maggio*, 12 N.Y.2d 789, 235 N.Y.S.2d 377, 186 N.E.2d 809 (1962); *State v. Shambo*, 133 Mont. 305, 322 P.2d 657 (1958).

In this case, the conduct which resulted in the appellant's conviction of sodomy did not involve the use of the male sex organ. I, therefore, would hold that the act shown by the evidence to have been performed did not violate the terms of Article 125 of the Uniform Code of Military Justice. The appellant's conviction of sodomy, therefore, should not be sustained.