# Authority of Military Investigators to Request Search Warrants Under Rule 41

There is no legal impediment to the Attorney General's amending 28 C.F.R. § 60.2(g) to add military members of Department of Defense investigative agencies to the list of law enforcement officers authorized to seek and execute search warrants pursuant to Rule 41 of the Federal Rules of Civil Procedure

The Posse Comitatus Act does not prohibit the issuance of search warrants to military investigators engaged in the enforcement of the Uniform Code of Military Justice (UCMJ), since that statute only restricts military involvement in civilian law enforcement activities.

Military investigators engaged in the enforcement of the UCMJ may be regarded as "federal law enforcement officers" within the scope of Rule 41, and federal magistrates would thus be authorized to issue civilian search warrants to them upon the appropriate amendment of 28 C.F.R. § 60.2(g).

October 18, 1982

## MEMORANDUM OPINION FOR THE ATTORNEY GENERAL

This memorandum responds to a request originally filed with this Office by the General Counsel of the Department of Defense (DOD) on December 7, 1979, and renewed by the General Counsel on March 26, 1982, concerning the issuance of search warrants to military investigators pursuant to Rule 41 of the Federal Rules of Criminal Procedure.[1] Specifically, DOD seeks an amendment to

---

[1] This request has had a long and circuitous history. Following the December 7, 1979, request, this Office received a memorandum dated December 18, 1979, from the Criminal Division's Office of Legislation questioning whether DOD investigators who are authorized to enforce the Uniform Code of Military Justice (UCMJ) are "engaged in the enforcement of the criminal laws" within the meaning of Rule 41(h) so as to qualify for authorization by the Attorney General to request search warrants, and, whether a violation of the UCMJ is a "criminal offense" so as to provide a basis for the issuance of a warrant under Rule 41. The memorandum also questioned whether military investigators or civilian investigators under military direction fell within the category of "federal law enforcement officer[s]" authorized by Rule 41(a) to request issuance of search warrants. These issues were discussed with the Defense Department's Office of General Counsel; on April 17, 1980, the Office of General Counsel formally submitted its views on the matter. *See* letter of Apr. 17, 1980, from Associate General Counsel Dondy, Department of Defense, to Assistant Attorney General Harmon, Office of Legal Counsel.

On November 18, 1980, this Office transmitted to the Criminal Division a memorandum setting forth our conclusion that federal courts would generally lack jurisdiction to issue search warrants for violations of the UCMJ On February 27, 1981, the Criminal Division responded with a memorandum supporting the view taken in our memorandum.

On October 8, 1981, this Office advised the General Counsel of the Department of Defense of the Justice Department's views regarding its earlier request and of our intention, based on those views, to recommend to the Attorney General that § 60 2(g) be repealed altogether. On March 26, 1982, the General Counsel responded with a memorandum reiterating DOD's view that there are no legal impediments to extending the § 60.2(g) authority to request search warrants to military Defense investigators and renewed DOD's request for such an amendment.

Upon further reflection and analysis of the issues raised by DOD's request, we have reached the conclusions, set forth in the text above, which are contrary to those tentatively reached by this Office and the Criminal Division in our earlier consideration of the issue.

567

§ 60.2(g) of Title 28 of the Code of Federal Regulations which would permit military members of the various DOD investigative agencies, as well as the civilian agents presently authorized by that regulation, to request from federal magistrates search warrants to investigate violations of the Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 801–940.

Section 60.2(g) was codified in 1979, pursuant to Attorney General Order No. 826–79, which revised the catalogue of officials authorized to request search warrants under Rule 41 of the Federal Rules of Criminal Procedure to include "[a]ny civilian agent of the Department of Defense who is authorized to enforce the Uniform Code of Military Justice" (UCMJ). Attorney General Order No. 826–79, 44 Fed. Reg. 21785 (1979). The order was issued in response to a request by the Department of Defense for designation of civilian agents of the Defense Investigative Service, Army Criminal Investigation Command, Naval Investigative Service, and Air Force Office of Special Investigations as persons empowered to obtain search warrants under Rule 41 when they are otherwise "authorized to enforce laws of the United States."[2]

At the time that the order was under consideration, the Department's initial concern was whether the grant of such authority to agents of the military departments would violate the Posse Comitatus Act, 18 U.S.C. § 1385, which generally prohibits the use of military personnel for civilian law enforcement purposes.[3] This concern was quickly eliminated in view of the Act's explicit exception from its prohibition of those "cases and . . . circumstances" in which the use of the military is "expressly authorized by the Constitution or Act of Congress." Because 10 U.S.C. §§ 802, 807, 816–26 and 846–47[4] expressly authorize the Armed Forces to enforce the UCMJ, we concluded that the Posse Comitatus Act posed no impediment to military requests for, and execution of, search warrants for that purpose.[5] Because DOD's original request for warrant authority was with respect to civilian DOD agents only, this Office did not consider whether there existed any potential legal impediments to the exercise of such authority by military DOD agents.

In considering DOD's request that § 60.2(g) be expanded "to include all DOD investigators, regardless of whether they are military or civilian, in the enforce-

---

[2] *See* Hammond, Deputy Assistant Attorney General, Office of Legal Counsel, "Memorandum for Philip B. Heymann, Assistant Attorney General, Criminal Division, re. Authority of Department of Defense Civilian Agents to Obtain Search Warrants" (Nov. 16, 1978); Harmon, Assistant Attorney General, Office of Legal Counsel, "Memorandum for Philip Heymann, Assistant Attorney General, Criminal Division, re: Department of Defense Request to Amend Attorney General Order 510–73" (Sept. 11, 1978).

[3] The Posse Comitatus Act provides that

[w]hoever, except in cases and under circumstances expressly authorized by the Constitution or Act of Congress, willfully uses any part of the Army or the Air Force as a posse comitatus or otherwise to execute the laws shall be fined not more than $10,000 or imprisoned not more than two years, or both.

18 U.S C. § 1385. *See generally* Note, *The Posse Comitatus Act: Reconstruction Politics Reconsidered*, 13 Am Crim. L Rev. 703 (1976); Meeks, *Illegal Law Enforcement· Aiding Civil Authorities in Violation of the Posse Comitatus Act*, 70 Mil. L. Rev. 83 (1975)

[4] These sections set forth the arrest and apprehension procedures for persons subject to the Code and procedures for courts-martial

[5] *See* Hammond, "Memorandum for Philip B. Heymann" (Nov. 16, 1978), *supra;* Harmon, "Memorandum for Philip Heymann" (Sept. 11, 1978), *supra.*

ment of the Uniform Code of Military Justice,"[6] we were confronted by two issues: first, whether the Posse Comitatus Act would bar the extension of § 60.2(g) to military investigators engaged in the enforcement of the UCMJ even though it would not bar such activity by civilian employees of DOD; and, second, whether Rule 41 of the Federal Rules of Criminal Procedure authorizes United States magistrates to issue search warrants in aid of the enforcement of the UCMJ. We conclude that the exception contained in the Posse Comitatus Act permitting the Armed Forces to enforce the UCMJ encompasses military as well as civilian DOD investigators, and that DOD investigators may be authorized by the Attorney General to seek search warrants from United States magistrates, pursuant to Rule 41, for the enforcement of the UCMJ.[7]

Nevertheless, although we conclude that no legal impediments exist to granting DOD's request for expanded authority under § 60.2(g), there well may exist policy reasons for the Attorney General, in the exercise of his discretion under Rule 41(h), to deny this authority. This memorandum is therefore being forwarded to you through the Assistant Attorney General in charge of the Criminal Division for any comments that that Division may have on this policy issue.

## I. The Posse Comitatus Act

As indicated above, the Posse Comitatus Act excepts from its general prohibition against the use of military personnel for law enforcement purposes those "cases and . . . circumstances" in which the use of the military is "expressly authorized by the Constitution or Act of Congress." 18 U.S.C. § 1385. We relied on this exception—as applied to the military's statutory authorization to enforce the UCMJ—when we made our original determination, regarding Attorney General Order No. 826–79, that the Posse Comitatus Act would not prohibit the involvement of civilian DOD agents in military law enforcement activities even though such agents may be subject generally to military control. Although DOD did not request our opinion at that time regarding the impact of the Posse Comitatus Act on the involvement of *military* agents in the enforcement of the UCMJ, the statutory authorizations for law enforcement activities contained in the UCMJ do not distinguish between military and civilian agents of the Department of Defense. *See, e.g.,* 10 U.S.C. § 807; Manual for Courts-Martial (1969 Rev. ed.) ¶ 19. Indeed, the concerns which gave rise to the Posse Comitatus Act, enacted in 1878, involved the perceived potential for abuse in circumstances where persons subject to military law and discipline—who, because of their higher duty to obey orders without question, were thought to be less sensitive to legal restraints and constitutional rights—might become involved in *civilian* law enforcement.[8] However, there was never any question of the propriety of military

[6] Rushforth, Assistant General Counsel for Intelligence, International and Investigative Programs, Department of Defense, Letter to John Harmon (Dec. 7, 1979)

[7] We note that the regulatory provision pursuant to which DOD seeks warrant authority requires that, except for "in the very rare and emergent case," the agent seeking a search warrant obtain the concurrence of the appropriate United States Attorney's Office. *See* 28 C F R. § 60 1 (1981).

[8] *See, e g ,* 7 Cong Rec 3581, 3678–79, 4240–4247 (1878). *See generally* Lawton, Deputy Assistant Attorney General, Office of Legal Counsel, Letter to General Counsel, Department of Defense (Mar 24, 1978).

personnel engaging in *military* law enforcement activities—*i.e.*, enforcing the UCMJ against those who are subject to the UCMJ. To the contrary, Congress specifically so provided. *See, e.g.*, 10 U.S.C. §§ 802, 807, 816–26, 846–47. Thus, the same statutory exceptions to the Posse Comitatus Act which permitted us to make our initial determination that civilian investigators could lawfully engage in UCMJ law enforcement activities would also support a similar determination regarding military investigators.

## II. Rule 41 Authority to Issue Search Warrants to Enforce the UCMJ

Rule 41 authorizes "federal magistrate[s] [and] judge[s] of . . . state court[s] of record," having jurisdiction over the property to be searched, to issue search warrants upon the request of a federal law enforcement officer, defined as "any government agent . . . who is engaged in the enforcement of the criminal laws and is within any category of officers authorized by the Attorney General to request the issuance of a search warrant." Fed. R. Crim. P. 41(a), (h). Subsection (c) provides that the warrant "shall be directed to a civil officer of the United States authorized to enforce or assist in enforcing any law thereof or to a person so authorized by the President of the United States." Rule 41 was promulgated pursuant to 18 U.S.C. § 3771, which authorizes the Supreme Court to:

> prescribe, from time to time, rules of pleading, practice, and procedure with respect to any or all proceedings . . . in criminal cases and proceedings to punish for criminal contempt of court in the United States district courts . . . and in proceedings before United States magistrates.

Two lines of inquiry are suggested by the language of Rule 41 as relevant to our consideration of whether DOD investigators—whether military or civilian—may request search warrants before United States magistrates. One inquiry is whether military and civilian investigators engaged in enforcement of the UCMJ may be regarded as "federal law enforcement officers" for purposes of Rule 41; the other inquiry is whether there is power under Rule 41 to issue search warrants in aid of enforcement of the UCMJ.

### A. *DOD Investigators as "Federal Law Enforcement Officers"*

The first line of inquiry involves a determination whether DOD investigators engaged in the enforcement of the UCMJ may be regarded as "federal law enforcement officers" within the scope of Rule 41. As noted above, subsection (h) of Rule 41 defines "federal law enforcement officer" as a government agent who is both "engaged in the enforcement of the criminal laws" and "authorized by the Attorney General to request the issuance of a search warrant." Without regard to the latter condition, which the Attorney General may, in the exercise of his discretion, provide, the focus of this inquiry is whether agents engaged in the

enforcement of the UCMJ are "engaged in the enforcement of the criminal laws" as contemplated by Rule 41.

We begin our analysis by noting that many offenses which are violations of the UCMJ also constitute violations of Title 18, the federal criminal code,[9] or have counterparts in the civilian criminal laws enforced by the States.[10] In addition, Article 134 incorporates "all . . . crimes and offenses not capital . . . [t]hough not specifically mentioned" in the Code as violations of the UCMJ. Such offenses are no less "criminal" because they are punishable by courts-martial rather than in criminal proceedings in federal or state courts. *See generally O'Callahan* v. *Parker,* 395 U.S. 258 (1969); *Grafton* v. *United States,* 206 U.S. 333 (1907); *United States* v. *Trottier,* 9 M.J. 337 (U.S.C.M.A. 1980); *United States* v. *Harris,* 8 M.J. 52 (U.S.C.M.A. 1979). Moreover, even those offenses which are purely military and would not be punishable as crimes in civilian courts[11] are considered by both civilian courts and military courts to be "crimes" punishable by courts-martial. *See generally O'Callahan* v. *Parker,* 395 U.S. at 265–66 ("Article 134 . . . punishes as a *crime* 'all disorders and neglects to the prejudice of good order and discipline in the armed forces.'") (emphasis added); *United States* v. *Levy,* 39 C.M.R. 672 (1968); petition for review denied, 18 U.S.C.M.A. 627 (1969) (petitioner also filed several habeas petitions in the civilian courts, culminating in *Parker* v. *Levy,* 417 U.S. 733 (1974)).[12]

Secondly, examination of the legislative history of the UCMJ leads to the conclusion that the drafters envisioned the punitive articles of the Code as constituting criminal offenses. In the 1949 hearings before a subcommittee of the House Committee on Armed Services, the chairman of the Committee's working group which drafted the Code described the Committee's efforts to reconcile the various definitions of the punitive offenses used by the military services in their respective service manuals, and noted that the Committee tried to pattern the Code after modern state penal codes. *See Uniform Code of Military Justice: Hearings on H.R. 2498 Before Subcomm. No. 1 of the House Comm. on Armed Services,* 81st Cong., 1st Sess., at 1237–41 (1949). *See also* H.R. Rep. No. 491, 81st Cong., 1st Sess. (1949); S. Rep. No. 486, 81st Cong., 1st Sess. (1949). Throughout these hearings and reports, the punitive articles, including the

---

[9] *See, e.g .,* Art. 81 (§ 371) (conspiracy to defraud or commit offense against the United States); Art. 88 (§ 871) (threats against the President), Art. 90 (§ 111) (assaulting certain officers), Art. 94 (§ 2193) (revolt or mutiny of seamen). *See also* Art. 95 (§§ 751–2); Art. 96 (§ 755), Art 104 (§§ 794, 798), Art. 106 (§ 794(b)); Art. 107 (§ 1001); Art. 116 (§ 2101); Art. 118 (§ 1111); Art. 119 (§ 1112); Art 120 (§§ 2031–2), Art. 121 (§§ 641, 661); Art. 122 (§ 2111–12); Art. 124 (§ 114); Art 126 (§ 81), Art. 128 (§ 113); Art. 131 (§ 1621), and Art. 132 (§§ 1002, 1003, 1025)

[10] *See, e g ,* Art 118 (murder); Art. 119 (manslaughter); Art 120 (rape), Art 121 (larceny); Art. 123 (forgery), and Art. 128 (assault).

[11] *See, e.g.,* Art. 83 (fraudulent enlistment), Art. 85 (desertion); Art. 86 (absent without leave), Art. 87 (missing movement); Art. 89 (disrespect toward superior commissioned officer), Art. 113 (misbehavior of a sentinel); Art. 117 (provoking speeches and gestures); Art 133 (conduct unbecoming an officer and a gentleman).

[12] *See also* 1 W. Winthrop, *Military Law and Precedents* 107–08 (2d ed. 1920):
[T]he specific military offenses may be divided into (1) those which are purely military and (2) those which are also crimes at the civil law . But in regard to these two forms of offenses it is to be observed that all are criminal and all military—criminal because the jurisdiction of courts-martial is criminal only; military because all offenses of officers and soldiers cognizable by courts-martial are necessarily military offenses

general articles 133 and 134, were referred to as "crimes." *Id*. From these reports it seems fairly clear that Congress' intent in enacting the UCMJ was the passage of a code by which the military could maintain the high level of discipline and order which is so necessary to its proper functioning, infractions of which would constitute criminal offenses.[13]

The Supreme Court's pronouncements in *Parker* v. *Levy*, 417 U.S. 733, 749 (1974), and *Middendorf* v. *Henry*, 425 U.S. 25, 34 (1976), that "the UCMJ cannot be equated to a criminal code," and that a summary court-martial is not a "'criminal prosecution' within the meaning of the Sixth Amendment" do not deter us from our conclusion that the enforcement of the UCMJ constitutes "enforcement of the criminal laws" within the purview of Rule 41. Those pronouncements were made by the Court in the context of challenges to the constitutionality of particular provisions of the Code,[14] and certain aspects of the summary court-martial procedures,[15] and not to the "criminal" nature of the punitive articles of the Code for purposes of securing warrant authority.

An issue related to the authority of DOD agents to request search warrants under Rule 41 concerns the apparent limitation contained in subsection (h) regarding who may execute the warrant. Subsection (c) provides that warrants issued pursuant to Rule 41 "shall be directed to a civil officer of the United States authorized to enforce or assist in enforcing any law thereof *or* to a person so authorized by the President of the United States." (Emphasis added.) While we

---

[13] In a memorandum to the Assistant Attorney General of this Office dated April 17, 1980 at pp 2–3, the Associate General Counsel of DOD pointed out numerous other indicia of the UCMJ's character as a code of "criminal" laws.

> The Congress has provided that persons convicted by courts-martial are to be treated as other convicted felons and denied the right to receive Government annuities or retirement pay (5 U.S C § 8312). The executive branch of the Federal Government also recognized that the UCMJ is a "criminal code" when the Rules Governing Petitions for Executive Clemency were promulgated in October of 1962. 28 C.F.R § 1.1 These rules deal with convictions both in federal criminal courts and military courts-martial where persons convicted in these tribunals seek to be pardoned by the President In addition, a large percentage of states treat convictions by courts-martial as a federal conviction for purposes of denying the right to vote in general elections. (AFP 211–4)
>
> In the context of "search and seizure," the UCMJ constitutes a body of "criminal laws," subjecting the enforcers thereof to the potential sanction of the exclusionary rule should they violate the Fourth Amendment's proscription against unreasonable searches and seizures. *See United States* v *Fimmano*, 8 M J 197 (C.M A. 1980), *United States* v *Ezell*, 6 M J 307 (C M A 1979)  . . [In addition, the Department of Justice] has promulgated a regulation that provides for the operation of interagency criminal information exchange systems entitled "Criminal Justice Information Systems " 28 C F R Part 20. All arrests for violations of the punitive articles of the UCMJ, even those with no civilian counterpart, are routinely reported to the DOJ for inclusion in the individual's criminal record.        Indeed, DOJ treats the purely military offense of AWOL as a felony and authorizes their law enforcement officials to arrest and detain [any] AWOL suspect without a warrant and without the suspect having committed any offense in the presence of the arresting officer.

[14] In *Parker* v. *Levy*, 417 U.S. at 749, the Court upheld Articles 133 (10 U.S C § 933, which punishes a commissioned officer for "conduct unbecoming an officer and a gentleman") and 134 (10 U S.C. § 934, which punishes any person subject to the Code for, *inter alia*, "all disorders and neglects to the prejudice of good order and discipline in the armed forces") against First and Fifth Amendment challenges that those provisions were overbroad and unconstitutionally vague in violation of the Due Process Clause, observing that, because of the peculiar exigencies of the military community, the UCMJ regulates "a far broader range of the conduct of military personnel than a typical state criminal code regulates of the conduct of civilians " *Id*. at 750.

[15] In *Middendorf* v. *Henry*, 425 U S. at 38, the Court held that the Sixth Amendment right to counsel did not attach in summary court-martial proceedings because such proceedings are sufficiently distinct from "traditional civilian criminal trial[s]" as to fall outside the scope of "criminal proceeding," as contemplated by the Sixth Amendment.

have no doubt that "civil officer" in this context means "nonmilitary officer,"[16] we do believe that military and civilian investigators engaged in the enforcement of the UCMJ are persons "authorized by the President" "to enforce or assist in enforcing" the laws of the United States, so as to come within the limitation contained in subsection (h) setting forth to whom warrants under Rule 41 properly may be issued.

Paragraph 19a of Manual for Courts-Martial (Rev. ed. 1969), E.O. 11476 (June 19, 1969) 34 Fed. Reg. 10503, which authorizes "[a]ll commissioned officers, warrant officers, petty officers, noncommissioned officers, and, when in the execution of their . . . police duties, Air Force security police, military police, members of the shore patrol, and such persons as are designated by proper authority to perform . . . police duties, *including duties as criminal investigators*" to enforce the UCMJ by apprehending persons reasonably believed to have violated the Code, provides the requisite presidential authority (emphasis added). As no serious question can be raised regarding the UCMJ's status as "law[s] of the United States," we believe that DOD investigators, both military and civilian, are entitled to receive civilian search warrants upon proper application pursuant to Rule 41.

## B. *United States Magistrates' Authority to Issue Warrants to DOD Agents*

The second line of inquiry concerns the authority of United States magistrates to issue search warrants pursuant to Rule 41 for the enforcement of the UCMJ. The prerequisites for a magistrate's or court's issuance of a lawful search warrant are: (1) that the court have jurisdiction over the place to be searched; (2) that the warrant is based on probable cause to believe that the items to be searched for will be found on the premises; and (3) that the warrant specify with particularity the items or physical effects to be obtained. *See generally* 8A Moore's Federal Practice ¶ 41.02 (2d ed. 1981). There is no requirement that the offenses for which evidence is sought with warrants issued pursuant to Rule 41 be violations of Title 18 of the United States Code—it is sufficient that, once probable cause is established by a federal law enforcement officer, as required by Rule 41(a), the issuing authority have territorial jurisdiction over the place to be searched. *See United States* v. *Strother,* 578 F.2d 397 (D.C. Cir. 1978). Thus, while the needs of

---

[16] Prior to the promulgation of Rule 41, the statutory provision governing search warrants authorized the issuance of warrants "to a civil officer of the United States duly authorized to enforce or assist in enforcing any law thereof, or to a person so duly authorized by the President of the United States " Title XI of the Espionage Act of June 15, 1917, ch 30, 40 Stat 217, 229. The legislative history reflects that, as referred to the Senate Committee on the Judiciary, the Espionage Act expressly permitted the issuance of warrants to military or naval officers as well as civil officers and persons authorized by the President to enforce the laws The Senate accepted an amendment by the Committee deleting the inclusion of military or naval officers from the classes of persons eligible to execute warrants, but added a proviso permitting the issuance of warrants to naval or military officers in time of war. 55 Cong Rec 1866 (1917) That proviso was deleted without explanation when the search warrant section was completely rewritten in conference H.R. Conf Rep. No. 69, 65th Cong , 1st Sess. 14, 20 (1917)

In construing this provision, the Supreme Court has held that the term "civil officer" was intended by Congress to be a limitation "that the person designated shall be a civil and not a military agent of the government " *Steele* v. *United States,* 267 U.S. 498, 507 (1925) *See also United States* v. *Pennington,* 635 F.2d 1387 (10th Cir. 1980).

DOD investigators to search persons subject to the Code and premises under military control are met by "search authorizations" issued by military commanders or judges, their needs to search private dwellings or other premises beyond the military's jurisdiction for evidence of UCMJ violations can *only* be met by their obtaining the authority to conduct such searches from civilian judicial authorities, whether state or federal. If the civilian authorities are federal, the proper procedure for obtaining search authority is that which is set out in Rule 41.

As circumstances presently exist, DOD investigators may obtain "authorizations to search" from military commanders or their delegees, judges, or magistrates upon a showing of probable cause to conduct searches of persons subject to military law, military property, persons, and property within military control, or nonmilitary federal property within a foreign country. Rule 315 of the Military Rules of Evidence, Manual for Courts-Martial (Rev. ed. 1969, as amended by Exec. Order No. 12198, Mar. 12, 1980, 45 Fed. Reg. 16932, 16953). To conduct investigations beyond the jurisdiction of these military "authorizations to search," DOD military agents under a military chain of command must now enlist the aid of civilian federal investigative agencies to obtain and execute civilian search warrants on their behalf. *See* Letter from Associate General Counsel, DOD to Assistant Attorney General, Office of Legal Counsel (April 17, 1980), *supra*. In contrast, *civilian* agents of the DOD, by virtue of Attorney General Order No. 826–79, now may seek directly from U.S. magistrates, with the concurrence of the local United States Attorney's office and pursuant to Rule 41, search warrants for the enforcement of the UCMJ. Although military agents and, prior to 1979, civilian DOD agents, are completely dependent upon a determination by civilian agencies to expend time and human resources to obtain, and in some cases, execute warrants for investigation of offenses over which they exercise no particular law enforcement responsibilities or otherwise have very little interest, the fact remains that without regard to whether the warrant is ultimately issued to military *or* civilian investigators, DOD agents or Assistant U.S. Attorneys, United States magistrates have been exercising their authority properly under Rule 41 to issue search warrants for the enforcement of the UCMJ.

The use of civilian search warrants in military investigations has been contemplated at least since the 1909 Articles of War, Art. 106 of which provided for civilian apprehension of military deserters. *See* 35 Stat. 622 (1909); 34 U.S.C. § 1011 (1946), and the present-day Art. 8, 10 U.S.C. § 808 (1976). In addition, the Military Rules of Evidence, recently amended by E.O. 12198 (March 12, 1980), specifically define "search warrant" as permission to search and seize issued by "competent civilian authority." *See* Rule 315(b)(2). Were such use not contemplated, there would exist a gap between investigations for which the military courts and commanders had authority to order searches and those over which civilian courts exercised jurisdiction, into which would fall a rather large number of military investigations of UCMJ offenses for which crucial evidence is lodged off-base. Such an occurrence was evidently not within the contemplation of Congress (in placing no "civilian" limitations on Rule 41), the President (in

issuing the Manual for Courts-Martial), the military courts, or indeed, the Supreme Court.[17]

## III. Policy Considerations

While we do not believe that any purely legal problems are presented by DOD's request that military agents be granted the authority, under § 60.2(g), to seek and execute Rule 41 search warrants directly, we believe that the appropriateness of such authority and its implications, as a policy matter, should be examined carefully before a decision to grant DOD's request is made. For example, a primary area of concern might be whether adequate safeguards exist to protect the privacy interests of civilians, whose premises could be searched as a subject of third-party searches by military agents for evidence of UCMJ violations by persons subject to the Code. Although this situation does not raise Posse Comitatus Act problems of military involvement in civilian law enforcement, the concerns which gave rise to the proscriptions contained in the 1878 Act could be raised as potentially legitimate concerns today.

This concern, however, may be more abstract than real. The practical difference made by granting military agents § 60.2(g) authority is arguably negligible. Without § 60.2(g) authority, a military agent must now find a civilian law enforcement officer to accompany him to the courthouse and officially request the search warrant on his behalf. It is not clear whether warrants obtained in this manner also require civilian execution, although DOD has informed us that once the warrant has been obtained, military investigative agents do execute the warrant, unaccompanied by civilians. *With* § 60.2(g) authority, military agents, like their civilian counterparts, may, upon obtaining the concurrence of the appropriate United States Attorney's office, go to the courthouse, unaccompanied by a civilian law enforcement officer, to request search warrants which they may execute during the course of their investigations. Thus, assuming that military agents already have been executing search warrants obtained for their investigations, the only practical difference that designating military agents under § 60.2 would make is that military agents would no longer have to wait for civilian law enforcement authorities to physically accompany them to the courthouse. Such designation would *not*, except for "in the very rare and emergent case," relieve the agent of the responsibility under § 60.1 to obtain approval from civilian authorities before seeking the warrant.

In addition, with respect to third-party searches, the Attorney General's guidelines promulgated pursuant to the Privacy Protection Act of 1980, 42 U.S.C. § 2000aa, so severely restrict the propriety and scope of third-party searches as to minimize substantially the concerns expressed above regarding military searches of civilian premises. *See* 28 C.F.R. § 59 (1981). The guidelines

---

[17] *See* statement of facts in *Schlesinger* v. *Councilman*, 420 U S. 738, 741 (1975), in which the Court recounts the apprehension of a military defendant by civilian law enforcement authorities who, based on probable cause established by military investigations, searched defendant's off-post apartment and found illegal drugs Defendant was then turned over to military authorities for prosecution under the UCMJ.

establish strict criteria and procedural requirements which must be met before a search warrant may be used to obtain documentary evidence held by disinterested third parties. Nevertheless, the guidelines would not apply in circumstances where the "third-party" civilian is a participant in the criminal activity, or is believed by the investigator to have reason to harbor or protect the alleged offender. Nor would the guidelines apply to "contraband, the fruits or instrumentalities of a crime, or things otherwise criminally possessed,"[18] such as drugs—the detection of which, and subsequent prosecution of military offenders, is a very high priority for DOD investigators. Thus, the impact of these guidelines on military investigations remains to be determined.

## IV. Conclusion

For the reasons stated above, we have concluded that there are no legal impediments to granting DOD's request to include military agents among the list of law enforcement officers in § 60.2 who are authorized to request search warrants pursuant to Rule 41. We would add that, in view of some of the issues raised in part III above, the policy implications of such authority should be explored further.

THEODORE B. OLSON
*Assistant Attorney General*
*Office of Legal Counsel*

---

[18] *See* 28 C.F.R. § 59 2(c).