# UNITED STATES NAVY–MARINE CORPS COURT OF CRIMINAL APPEALS

―――――――――――――

## No. 201500163

―――――――――――――

### UNITED STATES OF AMERICA
Appellee

v.

### MICHAEL K. ELLIS
Chief Information Systems Technician (E-7), U.S. Navy
Appellant

―――――――――――――

Appeal from the United States Navy-Marine Corps Trial Judiciary

Military Judge: Captain Robert J. Crow, JAGC, USN.
Convening Authority: Commander, Navy Region Southeast, Naval
Air Station, Jacksonville, FL.
Staff Judge Advocate's Recommendation: Commander George W.
Lucier, JAGC, USN.
For Appellant: Brian A. Pristera, Esq.; Captain Daniel R. Douglass,
USMC.
For Appellee: Lieutenant Allyson L. Breech, JAGC, USN; Captain
Sean M. Monks, USMC.

―――――――――――――

Decided 30 March 2018

―――――――――――――

Before MARKS, JONES, and WOODARD, *Appellate Military Judges*

―――――――――――――

**This opinion does not serve as binding precedent but may be cited as persuasive authority under NMCCA Rule of Practice and Procedure 18.2.**

―――――――――――――

WOODARD, Judge:

In January 2015, the appellant was convicted of numerous offenses and was sentenced to two years' confinement, reduction to pay grade E-1, and a dishonorable discharge. On 30 August 2016, this court set aside the findings and sentence and authorized a rehearing. *See United States v. Ellis*, No.

201500163, 2016 CCA LEXIS 516, unpublished op. (N-M. Ct. Crim. App. 30 Aug 2016). At a rehearing, a panel of members with enlisted representation, sitting as a general court-martial, convicted the appellant, contrary to his pleas, of one specification of abusive sexual contact and two specifications of assault consummated by battery in violation of Articles 120 and 128, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 920 and 928 (2012).[1] The members sentenced the appellant to a letter of reprimand, 45 days' restriction, and reduction to pay grade E-6. The convening authority (CA) approved the sentence as adjudged and ordered it executed.[2]

The appellant alleges that the evidence is legally and factually insufficient to support his convictions. We agree, in part, and grant relief in our decretal paragraph. Although not raised by the parties, we note error within the court-martial order (CMO) and direct corrective action in our decretal paragraph. We are convinced the findings as modified herein and the reassessed sentence are correct in law and fact and that no error materially prejudicial to the substantial rights of the appellant remains. Arts. 59(a) and 66(c), UCMJ.

## I. BACKGROUND

The appellant and the victim, Chief Petty Officer (Chief) TA, worked together in the same department of the same command. As fellow chief petty officers, they often socialized in the same circles. Prior to the night of the offenses, neither the appellant nor Chief TA had ever expressed or demonstrated a romantic or sexual interest in the other. At the time of the misconduct, the appellant was living with his fiancée and their newborn son. Chief TA was a single mother of a 14-year-old son, JA, who lived with her at her off-base home.

---

[1] The charges and specifications before the rehearing were renumbered on a cleansed charge sheet, Appellate Exhibit (AE) IX. The appellant was charged with two specifications of abusive sexual contact in violation of Article 120(d), UCMJ, and two specifications of assault consummated by a battery in violation of Article 128, UCMJ. At the conclusion of the government's case, and pursuant to the appellant's RULE FOR COURTS-MARTIAL 917, MANUAL FOR COURTS-MARTIAL, UNITED STATES (2016 ed.), motion, the military judge entered findings of not guilty to the language "forcing her to the ground" in the abusive sexual contact alleged in Specification 2 of Charge I. He also entered a finding of not guilty of Specification 2 of Charge II which alleged that same conduct as an assault consummated by battery. The members acquitted the appellant of the greater offense of abusive sexual contact alleged in Specification 1 of Charge I but convicted him of the lesser included offense of an assault consummated by a battery, in violation of Article 128, UCMJ.

[2] This court maintains jurisdiction over the case because the appellant's original approved sentence included a dishonorable discharge. *See* Art. 66(b)(1), UCMJ; *United States v. Johnson*, 45 M.J. 88, 90 (C.A.A.F. 1996).

On 8 December 2012, the appellant, Chief TA, and several other chief petty officers from the command gathered to watch the annual Army-Navy football game at a sports bar. Following the game, the appellant, Chief TA, Chief TW,[3] and Chief JH,[4] all of whom had been drinking alcohol to some degree, adjourned to Chief TA's nearby home to continue celebrating the Navy victory. Many months later, Chief TA accused the appellant of inappropriately touching her without her consent on three separate occasions that night.

We will address each offense chronologically, and refer to them by the location in which they occurred—bathroom, kitchen, and then bedroom.

## II. DISCUSSION

We review both legal and factual sufficiency *de novo*. *United States v. Washington*, 57 M.J. 394, 399 (C.A.A.F. 2002) (citing *United States v. Cole*, 31 M.J. 270, 272 (C.M.A. 1990)); *see also* Art. 66(c), UCMJ. When reviewing legal sufficiency, we ask whether, considering the evidence in the light most favorable to the prosecution, a reasonable fact-finder could have found all the essential elements beyond a reasonable doubt. *United States v. Turner*, 25 M.J. 324, 324-25 (C.M.A. 1987) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). In evaluating factual sufficiency, we determine whether, after weighing the evidence in the record of trial and making allowances for not having personally observed the witnesses, we are convinced of the appellant's guilt beyond a reasonable doubt. *Id.* at 325. "Reasonable doubt, however, does not mean the evidence must be free from conflict." *United States v. Rankin*, 63 M.J. 552, 557 (N-M. Ct. Crim. App. 2006) (citation omitted). In exercising the duty imposed by this "awesome, plenary, *de novo* power," *Cole*, 31 M.J. at 272, this court may judge the credibility of witnesses, determine controverted questions of facts, and substitute our judgment for that of the court-martial members. Art. 66(c), UCMJ. Further, we may believe part of a particular witness' testimony yet disbelieve another part. *United States v. Harris*, 8 M.J. 52, 59 (C.M.A. 1979); *see* Art. 66(c), UCMJ.

## A. Assault consummated by a battery in the bathroom

The first offense occurred in the bathroom with the appellant convicted of touching Chief TA's breasts and buttocks with his hands, without her consent, in violation of Article 128, UCMJ . To support this conviction, the

---

[3] Chief TW, a female, had recently joined the command. This was her first social interaction with the appellant and Chiefs TA and JH.

[4] Chief JH, a male, was a good friend of both the appellant and Chief TA.

government needed to prove beyond a reasonable doubt that: (1) the appellant did bodily harm to Chief TA; (2) that he did so by touching her breasts and buttocks with his hands; and (3) the bodily harm was done with unlawful force or violence.

An assault is "an attempt or offer with unlawful force or violence to do bodily harm to another[.]" MANUAL FOR COURTS-MARTIAL (MCM), UNITED STATES (2016 ed.), Part IV, ¶ 54.c.(1)(a). "Bodily harm" is any offensive touching of another, however slight. *Id.* "Unlawful force or violence" is physical force used "without legal justification or excuse and without the lawful consent of the person affected." *Id.* A battery is "an assault in which the attempt or offer to do bodily harm is consummated by the infliction of that harm." *Id.* at ¶ 54.c.(2)(a).

The evidence presented at trial establishes that after arriving at Chief TA's home, the appellant continued to drink heavily while playing dominoes. The dominoes game ended when the appellant and Chief TA began arguing over how the game should be scored. In the midst of the disagreement, Chief TA excused herself from the game table in the kitchen in order to use the bathroom. The appellant followed her, uninvited, into the bathroom, shut the door, and continued the argument. Then, without Chief TA's consent, he touched her breast over her clothing, attempted to kiss her, and placed his hand under her dress—touching her underwear—while commenting about her underwear "[o]h you've got the nice ones on too."[5] Chief TA testified that she then pushed the appellant away from her and told him to "[g]et the f[***] out."[6] Chief TW and JA heard Chief TA tell the appellant to get out of the bathroom.

Although Chief TA did not confront the appellant about his actions in the bathroom in front of her guests, she did later confide in Chief TW—the only other female present—that something had happened in the bathroom. After Chief TA and the appellant emerged from the bathroom, Chief TW informed Chief TA that it was time for her to head home. Chief TW testified that as she was leaving Chief TA told her the appellant had "come on to her"[7] and that he was "brushing up on her"[8] in the bathroom and that she did not like it.

---

[5] Record at 200.

[6] *Id.* at 207.

[7] *Id.* at 310.

[8] *Id.* at 318.

Despite the appellant's conduct in the bathroom, Chief TA did not ask him to leave. Chief TA explained that this was because of the level of her fellow chiefs' intoxication at that point in the evening. She was concerned for both chiefs' careers—the appellant and Chief JH—should they be arrested for driving to their homes while intoxicated.[9]

After reviewing the record of trial and considering the evidence in the light most favorable to the prosecution, we are convinced that a reasonable fact-finder could have been convinced beyond a reasonable doubt that, while in the bathroom with Chief TA, the appellant did bodily harm to her by touching her breasts and buttocks with his hands, without her consent. Furthermore, after weighing the evidence in the record of trial and making allowances for not having personally observed the witnesses, we too are convinced beyond a reasonable doubt that the appellant did bodily harm to Chief TA while in the bathroom.

However, based upon the record before us, we are only convinced that he did so by touching her buttocks and one of her breasts with one of his hands. Thus, we find the evidence is legally and factually sufficient to sustain a modified finding of guilty to Charge II, Specification 1. In our decretal paragraph, we will except the words "breasts" and "hands" and substitute therefor the words "breast" and "hand."

**B. Abusive sexual contact in the kitchen**

The second offense occurred in the kitchen with the appellant convicted of lying on top of Chief TA with his body and touching her thighs and buttocks with his hands, without her consent, in violation of Article 120(d), UCMJ. To support the appellant's conviction of abusive sexual contact, the government needed to prove beyond a reasonable doubt that: (1) the appellant committed sexual contact upon Chief TA, to wit: lying on top of her with his body, and touching her thighs and buttocks with his hands; (2) he did so by causing bodily harm to Chief TA, to wit: lying on top of her with his body, and touching her thighs and buttocks with his hands; and (3) he did so without Chief TA's consent.

Sexual contact is defined as any "touching, . . . either directly or through the clothing, [of] any body part of any person, if done with an intent to arouse or gratify the sexual desire of any person." MCM, Part IV, ¶ 45.a(g)(2)(B). "Bodily harm" means "any offensive touching of another, however slight,

---

[9] *Id*. at 215-16. The appellant had parked his vehicle at a nearby military installation, and Chief JH provided him a ride to the sports bar and then to Chief TA's home.

including any . . . nonconsensual sexual contact." *Id.* at ¶ 45a.(g)(3). "'[C]onsent' means a freely given agreement to the conduct at issue by a competent person. An expression of lack of consent through words or conduct means there is no consent." *Id.* at ¶ 45a.(g)(8). The government may prove the appellant's intent in touching with circumstantial evidence. *United States v. Vela*, 71 M.J. 283, 286 (C.A.A.F. 2012).

The evidence presented at trial establishes that sometime later in the evening—after the bathroom incident—Chief TA was in the kitchen cooking. While Chief JH and JA were seated on a couch in the adjoining living room watching television and talking, the appellant, uninvited, joined Chief TA in the kitchen. The appellant began "tussling"[10] with Chief TA over a cooking utensil. Somehow, during the struggle, the two of them fell to the floor behind a kitchen island and out of sight of JA and Chief JH. Chief TA ended up flat on her back, with the appellant lying on top of her. Chief TA told the appellant to "get off"[11] of her and unsuccessfully tried to "push him up off [of her]."[12] During the struggle, the appellant, once again, placed his hand under her dress and began "tugging at [her] panties."[13] Chief TA then grabbed a nearby hammer and threatened to hit the appellant in the head with it. Although Chief TA never testified that the appellant specifically touched her buttocks, when asked if the appellant "touch[ed] [her on] the back of [her] thigh"[14] she answered that the appellant "was tugging at [her] panties right then."[15]

During the incident, Chief TA called out for assistance saying, "[Chief JH], come get your boy."[16] After hearing Chief TA call for assistance several times, first JA and then Chief JH came to her aid. When JA entered the kitchen, he saw the appellant, who was much larger than both him and his mother, lying of top of his mother. Fearing for his mother's safety, JA ran upstairs to get a stun gun. But before JA could return, Chief JH—who had entered the kitchen and observed the appellant lying on top of Chief TA—had separated the parties, helped them to their feet, and ensured the appellant returned to the living room. Although Chief JH did not recall seeing a hammer, a stun gun, or whether Chief TA's dress was pulled up or

---

[10] *Id.* at 210.

[11] *Id.*

[12] *Id.* at 213.

[13] *Id.* at 210 and 213.

[14] *Id.* at 213.

[15] *Id.*

[16] *Id.*

disheveled, he acknowledged that he was very intoxicated at the time and "didn't focus on [the] details[.]"[17]

Again, Chief TA did not outwardly confront the appellant about his conduct or complain to Chief JH. Nor did she require that the appellant leave her home for the same reason as before.

After reviewing the record of trial and considering the evidence in the light most favorable to the prosecution, we are convinced that a reasonable fact-finder could have been convinced beyond a reasonable doubt that while on the floor in the kitchen, the appellant, without the consent of Chief TA, touched her by lying on top of her with his body and touched her thighs and buttocks while tugging at her underwear. And, despite his level of intoxication, the appellant did so with the intent to arouse or gratify his sexual desires. The appellant's intent can be readily inferred from the manner in which he touched Chief TA in the bathroom, his comment regarding her underwear, and the manner in which he touched Chief TA in the kitchen. Furthermore, after weighing the evidence in the record of trial and making allowances for not having personally observed the witnesses, we too are convinced beyond a reasonable doubt that the appellant commited sexual contact upon Chief TA while on the floor in the kitchen.

However, based upon the record before us, we are only convinced that he did so by lying on top of her with his body and touching her buttocks and one of her thighs with one of his hands as he was tugging at her underwear. Thus we find the evidence is legally and factually sufficient to sustain a modified finding of guilty to Charge I, Specification 2. In our decretal paragraph, we will except the words "thighs" and "hands" and substitute therefor the words "thigh" and "hand."

### C. Assault consummated by a battery in the bedroom

The third offense occurred in the bedroom with the appellant convicted of rubbing Chief TA's shoulders with his hands, without her consent, in violation of Article 128, UCMJ. To support the appellant's conviction the government needed to prove beyond a reasonable doubt that: (1) the appellant did bodily harm to Chief TA; (2) that he did so by rubbing her shoulders with his hands; and (3) the bodily harm was done with unlawful force or violence.

The evidence presented at trial establishes that, after leaving the kitchen, the appellant went to the living room and sat down on the couch. Chief TA

---

[17] *Id.* at 403.

and her son ate, cleaned the kitchen, and then retired to their upstairs bedrooms for the evening. When Chief TA went upstairs to her bedroom, the appellant appeared to be asleep on one of the couches in the living room. Not "feel[ing] right"[18] about what had occurred during the course of the evening and knowing that her bedroom door lock was not functioning, Chief TA placed her .380 caliber pistol under her pillow. Sometime later, the appellant entered her bedroom, sat down on the edge of her bed, and began discussing problems he was having with his fiancée. After telling the appellant "[w]hatever problems that you guys are having, you need to fix that at home[,]"[19] the appellant began to rub her shoulders with his hands in a massage-like manner. Chief TA immediately moved away from the appellant so that he could no longer touch her. He then leaned in towards her in what Chief TA perceived as an attempt to kiss her. At that point, she removed the pistol from under the pillow, placed it on her lap, and told the appellant "he was doing too much and he needed to go."[20] Chief TA then followed the appellant down the stairs and informed Chief JH "[y]eah, you all got to go."[21] Shortly thereafter, Chief JH and the appellant departed, in the middle of the night.

After reviewing the record of trial and considering the evidence in the light most favorable to the prosecution, we are convinced that a reasonable fact-finder could have been convinced beyond a reasonable doubt that, while in the bedroom, the appellant did bodily harm to Chief TA by rubbing her shoulders with his hands without her consent. Furthermore, we too are convinced beyond a reasonable doubt of the appellant's guilt of the offense of an assault consummated by a battery of Charge I, Specification 1.

In considering the factual sufficiency of all three offenses, we find Chief TA's testimony to be credible, compelling, and unrebutted. Of note, although the offenses inflicted upon Chief TA were not observed by other witnesses—except the appellant's lying on top of her in the kitchen—her testimony regarding other key facts of the surrounding events was independently corroborated by the other witnesses. Furthermore, despite the trial defense team's cross-examination efforts, her character for truthfulness remained intact. The persistent manner in which the appellant pursued and touched Chief TA and his sexually charged comments regarding her underwear are overwhelming circumstantial evidence of his intent to gratify his sexual desires. Finally, despite the appellant's level of intoxication, there can be no

---

[18] *Id.* at 217.

[19] *Id.* at 217-18.

[20] *Id.* at 220.

[21] *Id.* at 399.

reasonable mistake of fact regarding consent given Chief TA's repeated, clear, and escalating responses to the appellant's actions—demanding that he get out of the bathroom; calling for assistance from her fellow chief; threatening to hit him in the head with a hammer; and finally pulling a pistol and telling him to leave her home.

## D. Sentence reassessment

Having set aside the finding of guilty to some of the language alleged in Charge I, Specification 2 and Charge II, Specification 1, we must now determine if we are able to reassess the appellant's sentence. We have "broad discretion" when reassessing sentences. *United States v. Winckelmann*, 73 M.J. 11, 12 (C.A.A.F. 2013). However, we can only reassess a sentence if we are confident "that, absent any error, the sentence adjudged would have been of at least a certain severity[.]" *United States v. Sales*, 22 M.J. 305, 308 (C.M.A. 1986).

In determining whether to reassess a sentence or to order a sentencing rehearing, we consider the five factors espoused in our superior court's holding in *Winckelmann*: (1) whether there has been a dramatic change in the penalty landscape and exposure; (2) the forum of the court-martial; (3) whether the remaining offenses capture the gravamen of the criminal conduct; (4) whether significant aggravating circumstances remain admissible and relevant; and (5) whether the remaining offenses are the type with which we as appellate judges have experience and familiarity to reasonably determine what sentence would have been imposed at trial. *Winckelmann*, 73 M.J. at 15-16.

Because our findings do not effect significant changes to the language of the offenses and do not completely set aside the findings of guilty to any offense, there is no change in the penalty landscape. The remaining language captures the gravamen of the criminal conduct for which the members sentenced the appellant, and the modifications do not render any evidence presented at trial inadmissible or irrelevant. Furthermore, these are offenses with which we, as appellate judges, have in depth experience and familiarity. The evidence of the appellant's culpability and the harm inflicted on Chief TA remains the same. We conclude that sentence reassessment is appropriate. We are confident that, absent the error in this case, the court-martial would have imposed no less of a sentence than the members adjudged—a letter of reprimand, reduction to pay grade E-6, and 45 days' restriction.

## E. CMO error

An appellant is entitled to an official record accurately reflecting the results of his proceedings. *United States v. Crumpley,* 49 M.J. 538, 539 (N-M.

Ct. Crim. App. 1989). We test error in court-martial orders under a harmless-error standard. *Id.*

At a minimum, a court-martial promulgating order must contain the following information: (1) the type of court-martial and the convening command; (2) *a summary of all charges and specifications on which the appellant was arraigned*; (3) the *appellant's pleas*; (4) the findings or *disposition of all charges and specifications on which the appellant was arraigned*; (5) if adjudged, the sentence; and (6) a summary of the action taken by the CA in the case. RULE FOR COURTS-MARTIAL (R.C.M.) 1114(c)(1), MANUAL FOR COURTS-MARTIAL, UNITED STATES (2016 ed.) (emphasis added).

Although not raised by the parties, we note that the CMO incorrectly omits the language "forcing her to the ground" from Charge I, Specification 2, and fails to reflect a summary of and the appellant's pleas to Charge II, Specification 2. Here, the appellant was arraigned on and entered pleas of not guilty to the language and specification omitted from the CMO. Furthermore, the military judge, on the record, entered findings of not guilty to the omitted language and specification pursuant to an R.C.M. 917 motion. The failure to reflect the omitted information in the CMO was error; however, the error was harmless as it did not materially prejudice the appellant's substantial rights. To ensure the appellant has an official record which accurately reflects his proceedings, in our decretal paragraph we will order that the supplemental CMO reflect the information omitted in the CMO.

## III. CONCLUSION

The approved findings, as modified by this court, and the sentence, as reassessed, are affirmed.

The supplemental CMO shall reflect: (1) an accurate summary of Charge I, Specification 2 which includes the language "forcing her to the ground," the appellant's plea of not guilty to the specification, and the correct findings—guilty, excepting the language "forcing her to the ground," excepting the word "thighs" and substituting therefor the word "thigh," and excepting the word "hands" and substituting therefor the word "hand"; not guilty to the excepted language but guilty to the specification as excepted and substituted; (2) the findings to Charge II, Specification 1—guilty, excepting the word "breasts" and substituting therefor the word "breast" and excepting the word "hands" and substituting therefor the word "hand"; not guilty to the excepted language but guilty to the specification as excepted and substituted; and (3) a summary of Charge II, Specification 2 alleging the appellant forced Chief TA

to the ground with his hands, the appellant's plea of not guilty to the specification, and the finding of not guilty to the specification pursuant to R.C.M. 917.

For the Court



R.H. TROIDL
Clerk of Court