# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

———————————

**No. ACM 39309**

———————————

**UNITED STATES**
*Appellee*

**v.**

**Nathan E. SCOTT**
Senior Airman (E-4), U.S. Air Force, *Appellant*

———————————

Appeal from the United States Air Force Trial Judiciary

Decided 19 February 2019

———————————

*Military Judge:* James E. Key, III.

*Approved sentence:* Dishonorable discharge and confinement for 20 years. Sentence adjudged 7 April 2017 by GCM convened at Barksdale Air Force Base, Louisiana.

*For Appellant:* Major Mark J. Schwartz, USAF.

*For Appellee:* Lieutenant Colonel Joseph J. Kubler, USAF; Lieutenant Colonel G. Matt Osborn, USAF; Mary Ellen Payne, Esquire.

Before HUYGEN, MINK, and POSCH, *Appellate Military Judges*.

Judge MINK delivered the opinion of the court, in which Senior Judge HUYGEN and Judge POSCH joined.

———————————

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 18.4.**

———————————

MINK, Judge:

A general court-martial composed of a military judge alone convicted Appellant, contrary to his pleas, of two specifications of rape of a child who had not attained the age of 12 years and one specification of sexual abuse of a child, each on divers occasions and in violation of Article 120b, Uniform Code

of Military Justice (UCMJ), 10 U.S.C. § 920b.[1] The military judge sentenced Appellant to a dishonorable discharge and confinement for 20 years. The convening authority approved the adjudged sentence but waived the mandatory forfeiture of pay and allowances for a period of six months for the benefit of Appellant's spouse and dependent children.

Appellant raises six issues on appeal: (1) whether Appellant's convictions are factually and legally sufficient; (2) whether trial defense counsel provided ineffective assistance of counsel (IAC) during Appellant's trial; (3) whether the military judge erred by allowing SS, a minor child, to testify remotely during the first day of Appellant's trial; (4) whether portions of SS's testimony should have been stricken from the record; (5) whether Appellant was denied equal access to the witnesses; and (6) whether the military judge erred by ruling the testimony of LH, one of the forensic interviewers who questioned SS, was not cumulative.[2] In addition, we address a facially unreasonable delay in the post-trial processing of Appellant's case. We find no error with respect to the issues raised by Appellant[3] and no relief warranted for the delay in post-trial processing. Accordingly, we affirm the findings and sentence.

---

[1] The military judge also found Appellant not guilty of one specification of sexual abuse of a child and one specification of rape of a child who had not attained the age of 12 years, both in violation of Article 120b, UCMJ, 10 U.S.C. § 920b.

[2] Appellant personally raised issues (2) through (6) pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982). Appellant also personally raised an issue of legal and factual sufficiency, which we address in our discussion of issue (1).

[3] We have carefully considered all the issues raised by Appellant, but not all of them require discussion in this opinion. With respect to issue (3), the military judge did not abuse his discretion in allowing the remote live testimony of SS, a child under the age of 16, in accordance with Military Rule of Evidence 611(d). With respect to issue (4), the Defense did not object or request that any portion of SS's testimony be stricken from the record during the court-martial, and we find no error by the military judge in not striking *sua sponte* any portion of the testimony. With respect to issue (5), the military judge did not abuse his discretion in ruling that Appellant had not been deprived of equal access to witnesses or evidence pursuant to Article 46, UCMJ, and Rule for Courts-Martial 701(e). With respect to issue (6), the Defense did not object to the testimony of LH during the court-martial as cumulative or request relief at trial regarding the allegedly cumulative testimony of LH during the Article 32, UCMJ, preliminary hearing, and we find no error to review. These issues do not require further discussion or warrant relief. *See United States v. Matias*, 25 M.J. 356, 361 (C.M.A. 1987).

## I. BACKGROUND

In May 2016, Appellant was living in base housing on Barksdale Air Force Base, Louisiana with his wife, SS (their 5-year-old daughter), and their 1-year-old son. On Friday, 5 May 2016, Appellant and his wife went out to celebrate his wife's birthday, leaving the two children at home with CD, the 17-year-old daughter of one of Appellant's co-workers. CD had never babysat Appellant's children prior to this occasion. During the evening, while CD and SS were playing with unclothed Barbie dolls, SS licked one of the dolls between the legs. When CD asked SS why she had done so, SS replied "that's what her dad did to her, and that her daddy did it to make her c*m and that that's how you make babies." After Appellant and his wife returned home, CD's father picked CD up from Appellant's house and drove her home to their house. CD told her parents what SS had said Appellant had done to her. CD's father reported SS's statements to his chain of command, and an investigation immediately began into possible sexual abuse of SS by Appellant.

## II. DISCUSSION

### A. Legal and Factual Sufficiency

Appellant challenges the legal and factual sufficiency of his convictions for sexual abuse and rape of a child under the age of 12 years. The focus of Appellant's assignment of error is that his convictions are based solely on the testimony of SS, a 6-year-old child, who was not a reliable witness. We are not persuaded.

#### 1. Law

We review issues of legal and factual sufficiency de novo. Article 66, UCMJ, 10 U.S.C. § 866; *United States v. Washington*, 57 M.J. 394, 399 (C.A.A.F. 2002) (citation omitted). Our assessment of legal and factual sufficiency is limited to the evidence produced at trial. *United States v. Dykes*, 38 M.J. 270, 272 (C.M.A. 1993) (citations omitted).

The test for legal sufficiency of the evidence is "whether, considering the evidence in the light most favorable to the prosecution, a reasonable factfinder could have found all the essential elements beyond a reasonable doubt." *United States v. Turner*, 25 M.J. 324, 324 (C.M.A. 1987) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)); *see also United States v. Humpherys*, 57 M.J. 83, 94 (C.A.A.F. 2002) (quoting *Turner*, 25 M.J. at 324). "[I]n resolving questions of legal sufficiency, we are bound to draw every reasonable inference from the evidence of record in favor of the prosecution." *United States v. Barner*, 56 M.J. 131, 134 (C.A.A.F. 2001) (citations omitted).

The test for factual sufficiency is "whether, after weighing the evidence in the record of trial and making allowances for not having personally observed the witnesses, [we are] convinced of the [appellant]'s guilt beyond a reasonable doubt." *Turner*, 25 M.J. at 325; *see also United States v. Reed*, 54 M.J. 37, 41 (C.A.A.F. 2000) (quoting *Turner*, 25 M.J. at 325). "In conducting this unique appellate role, we take 'a fresh, impartial look at the evidence,' applying 'neither a presumption of innocence nor a presumption of guilt' to 'make [our] own independent determination as to whether the evidence constitutes proof of each required element beyond a reasonable doubt.'" *United States v. Wheeler*, 76 M.J. 564, 568 (A.F. Ct. Crim. App. 2017) (alteration in original) (quoting *Washington*, 57 M.J. at 399), *aff'd*, 77 M.J. 289 (C.A.A.F. 2018). "The term reasonable doubt, however, does not mean that the evidence must be free from conflict." *Id.* (citing *United States v. Lips*, 22 M.J. 679, 684 (A.F.C.M.R. 1986)). Although we "cannot find as fact any allegations of which the [appellant] was found not guilty at trial," we "may consider facts underlying an acquitted charge in considering whether the facts support a separate charge." *United States v. Rosario*, 76 M.J. 114, 117 (C.A.A.F. 2017).

Appellant was convicted of two specifications of rape of a child who had not attained the age of 12 years on divers occasions, which required the Government to prove beyond a reasonable doubt: (1) that Appellant committed, on divers occasions, a sexual act upon SS by causing penetration, however slight, of her anus with his penis and of her mouth with his penis; and (2) that at the time of the sexual act SS had not attained the age of 12 years.[4] *See Manual for Courts-Martial, United States* (2016 ed.) *(MCM)*, pt. IV, ¶45b.b.(1)(a). Appellant's conviction for sexual abuse of a child on divers occasions required the Government to prove beyond a reasonable doubt: (1) that Appellant committed, on divers occasions, a lewd act upon SS by licking her genitalia; (2) that Appellant did so with the intent to gratify his sexual desires; and (3) that at the time of the lewd act SS had not attained the age of 12 years.[5] *See id.* ¶ 45b.b.(4)(a). "Lewd act" means, *inter alia,* "any sexual contact with a child." Article 120b(h)(5), UCMJ, 10 U.S.C. § 920b(h)(5).

---

[4] In the specification alleging anal penetration, the Government also included a third element that Appellant committed the sexual act with an intent to gratify his sexual desires. As a result of adding this additional element, the Government was required to prove it even though an intent element is not required for the offense of rape of a child who has not attained the age of 12 years. *See MCM*, pt. IV, ¶ 45b.b.(1)(a).

[5] The Government included this element even though a child's age is already implied and is not required to be alleged for the offense of sexual abuse of a child based on the definition of child being "any person who has not attained the age of 16." *See*

*(Footnote continues on next page)*

**2. Analysis**

The primary evidence against Appellant was SS's testimony. Despite the fact that SS was only 6 years old at the time of trial, her testimony provided convincing proof of each of the elements of rape of a child under the age of 12 years and of sexual abuse of a child.

Appellant asserts that his convictions were legally and factually insufficient for several reasons. First, he contends that there was no medical, physical, or scientific evidence to support his convictions. Second, he asserts that SS's testimony was not credible because she has problems with her memory. Third, Appellant claims that SS's testimony was not credible because her testimony was manipulated by her mother and the investigators. We address each of these arguments in turn.

Appellant correctly states that there was no medical, physical, or scientific evidence to corroborate SS's testimony. He also argues there were no witnesses to the offenses. While agents from the Air Force Office of Special Investigations (AFOSI) searched Appellant's home, including SS's bedroom, they found no items of evidentiary value. The medical examinations performed on SS revealed no injuries and indicated that her hymen was intact. However, Dr. SF, a pediatrician who was qualified as an expert in pediatrics with a focus on child abuse, testified that a normal examination indicating no injuries and an intact, or apparently intact, hymen does not establish whether or not a child has been sexually abused. Similarly, Dr. SF testified that normal findings on an anal examination do not establish whether or not the child has been sexually abused.

Appellant also argues that AFOSI failed to corroborate or contradict SS's story. He asserts that there were no witnesses to the allegations against him, but that AFOSI did not seek evidence or question witnesses to other events in SS's life, specifically referencing events that did not involve Appellant and had occurred when Appellant and his family were living in Hawaii prior to the charged timeframe. However, from the time of her disclosure to the babysitter through her testimony at the court-martial, SS never wavered that

---

*MCM*, pt. IV, ¶ 45b.b.(4)(a) and Article 120b(h)(4), UCMJ, 10 U.S.C. § 920b(h)(4). The Government also used the term "lewd act" in the specification rather than the term "sexual contact," as specified in the elements. *See id.* Because "lewd act" is defined, *inter alia*, as "any sexual contact," and the Government alleged the specific sexual contact constituting the alleged lewd act, we find no error in the specification. *See* Article 120b(h)(5), UCMJ, 10 U.S.C. § 920b(h)(5).

every incident of Appellant's sexual abuse of her had occurred in Louisiana, not in Hawaii.

Appellant next attacks SS's credibility based on her self-described problem with her memory. Appellant points to SS's inability to remember her birthday and her statements that she was a vampire, that she did not remember who had been her babysitter, and that she never owned a Barbie doll. Appellant also notes that SS stated she was expecting to receive a present after her trial testimony was complete. Appellant further asserts that SS's description of the sexual abuse committed by Appellant varied each time she was asked about the incidents, including the number of times the incidents of abuse occurred, the locations of the incidents, and the change over time in her use of words such as "c*m" and "mucus" to describe ejaculate. While some of SS's testimony was inconsistent, SS consistently stated that Appellant put his penis in her mouth, that Appellant licked her genital area, and that Appellant put his penis in her "butt," each act on more than one occasion and while her mother was not at home. SS described how each act felt and stated that she told Appellant to stop and he told her to "shut up." Having reviewed the entire record of trial, we discern no meaningful conflict in SS's testimony with regard to the three specifications of which Appellant was convicted.

We have considered the discrepancies in SS's testimony noted by Appellant, along with any biases or motives advanced by Appellant. "[T]estimony need not be completely consistent to still be sufficiently reliable to sustain a conviction, and we do not confine our analysis to merely the testimony of a single witness in performing our factual sufficiency review under Article 66, UCMJ." *United States v. McFadde*n, No. ACM 38597, 2015 CCA LEXIS 520, at *11 (A.F. Ct. Crim. App. 18 Nov. 2015) (unpub. op.); *see also United States v. McElhaney*, 50 M.J. 819, 832 (A.F. Ct. Crim. App. 1999) (concluding evidence was factually sufficient, in part, because the appellant's wife corroborated appellant's romantic relationship with the victim, notwithstanding appellant's claim that the victim's testimony was implausible and inconsistent), *aff'd in part, rev'd in part on other grounds*, 54 M.J. 120 (C.A.A.F. 2000), *and aff'd*, 55 M.J. 361 (C.A.A.F. 2001).

Lastly, again attacking SS's credibility, Appellant argues that SS's testimony was manipulated by her mother and investigators. Appellant makes a number of assertions that he claims supports his argument that SS's testimony was not credible such as that the entire investigation was mishandled, that one of the investigators impermissibly asked SS leading questions, that SS's mother and grandmother conspired to frame Appellant, and that both SS's mother and grandmother lied under oath. Both SS's mother and grandmother denied any such collaboration or coaching of SS. SS herself also de-

nied that anyone helped her remember what Appellant had done to her. The evidence at trial failed to establish any motive for a surreptitious plan by SS's mother or grandmother. Additionally, SS's initial disclosure of Appellant's conduct to the babysitter was spontaneous, and, once the disclosure was reported, neither SS's mother nor her grandmother had any opportunity to discuss the allegations with SS until after she had provided a description of Appellant's offenses to several investigators.

While we have the independent authority and responsibility to weigh the credibility of the witnesses—including SS, SS's mother, and SS's grandmother—in determining factual sufficiency, we recognize that the trial court saw and heard the testimony. *See Washington*, 57 M.J. at 399. Like the factfinder at trial, we weigh the evidence in the record and determine whether a discrepancy in a witness's testimony—including a lapse in perception, memory, or recall—resulted from an innocent mistake or a deliberate lie. *United States v. Goode*, 54 M.J. 836, 844 (N.M. Ct. Crim. App. 2001). Additionally, the "factfinder[ ] may believe one part of a witness' testimony and disbelieve another." *United States v. Harris*, 8 M.J. 52, 59 (C.M.A. 1979).

Drawing "every reasonable inference from the evidence of record in favor of the prosecution," we find the evidence was legally sufficient to support Appellant's convictions. *See Barner*, 56 M.J. at 134. Moreover, having weighed the evidence in the record of trial and having made allowances for not having personally observed the witnesses, we are convinced of Appellant's guilt beyond a reasonable doubt. *See Turner*, 25 M.J. at 325. Appellant's convictions are therefore both legally and factually sufficient.

## B. Ineffective Assistance of Counsel at Trial

### 1. Law

The Sixth Amendment guarantees an accused the right to effective assistance of counsel. *United States v. Gilley*, 56 M.J. 113, 124 (C.A.A.F. 2001). In assessing the effectiveness of counsel, we apply the standard set forth in *Strickland v. Washington*, 466 U.S. 668, 687 (1984), and begin with the presumption of competence announced in *United States v. Cronic*, 466 U.S. 648, 658 (1984). *See Gilley*, 56 M.J. at 124 (citing *United States v. Grigoruk*, 52 M.J. 312, 315 (C.A.A.F. 2000)). Accordingly, we "will not second-guess the strategic or tactical decisions made at trial by defense counsel." *United States v. Mazza*, 67 M.J. 470, 475 (C.A.A.F. 2009) (quoting *United States v. Anderson*, 55 M.J. 198, 202 (C.A.A.F. 2001)). We review allegations of IAC de novo. *United States v. Gooch*, 69 M.J. 353, 362 (C.A.A.F. 2011) (citing *Mazza*, 67 M.J. at 474).

We utilize the following three-part test to determine whether the presumption of competence has been overcome:

> 1. Are appellant's allegations true; if so, "is there a reasonable explanation for counsel's actions"?
>
> 2. If the allegations are true, did defense counsel's level of advocacy "fall measurably below the performance . . . [ordinarily expected] of fallible lawyers"?
>
> 3. If defense counsel was ineffective, is there "a reasonable probability that, absent the errors," there would have been a different result?

*Id.* (alteration in original) (quoting *United States v. Polk*, 32 M.J. 150, 153 (C.M.A. 1991)).

**2. Analysis**

Appellant contends his trial defense counsel, Major (Maj) EB and Captain (Capt) VR, were constitutionally ineffective in three respects. First, he argues trial defense counsel failed to object to the military judge as the trier of fact after the military judge informed the parties he had been selected to become the Chief of the Special Victims' Counsel (SVC) Division in the Air Force Legal Operations Agency, resulting in a biased trier of fact deciding his case. Second, Appellant argues his trial defense counsel failed to introduce expert witness testimony during the court-martial, depriving Appellant of "invaluable insight on [SS]'s testimony and an expert opinion on why [SS's] testimony should not be given the weight [it was by the military judge]." Finally, Appellant argues that trial defense counsel failed to object to representatives from Bikers Against Child Abuse (BACA) sitting in the courtroom during Appellant's court-martial, creating a prejudicial climate and depriving Appellant of the "presumption of innocence."

In response to Appellant's claims, we ordered and received declarations from Maj EB and Capt VR. The declarations of each trial defense counsel were generally consistent and acknowledged rather than contradicted Appellant's assertions in the following respects: trial defense counsel did not object to the military judge as trier of fact in the case, they did not introduce expert witness testimony during the trial, and they did not object to the presence of representatives from BACA sitting in the courtroom during the trial. The declarations of both trial defense counsel instead focused on their reasons for each of these tactical decisions. Because we are not presented with conflicting declarations between Appellant and his trial defense counsel, a post-trial evidentiary hearing is not necessary in this case. *See United States v. Ginn*, 47 M.J. 236, 248 (C.A.A.F. 1997); *United States v. DuBay*, 37 C.M.R. 411, 413 (C.M.A. 1967).

Turning to the substance of Appellant's claims, we find that Maj EB and Capt VR provided a reasonable explanation as to why they did not challenge

the military judge. Following the military judge's disclosure to counsel for both Appellant and the Government that he had been selected for assignment as the Chief of the SVC Division, the military judge stated his own belief that his selection for the position created no actual or perceived conflict with him sitting as the military judge in Appellant's case. While the trial counsel chose not to voir dire the military judge on this issue, trial defense counsel chose to do so. In response to questions from trial defense counsel, the military judge indicated that he had "no particular affinity for the SVC job," but instead was seeking an assignment in the Washington, D.C., geographic area rather than any specific job. Based on the military judge's statements regarding the issue, Maj EB and Capt VR concluded that there was no reasonable or valid basis to challenge the military judge based on his selection for a job that he had not yet assumed. We agree.

We also find trial defense counsel's decision not to call an expert witness during either motions practice or the defense case-in-chief reasonable. As Maj EB explained, a confidential expert consultant in forensic psychology, Dr. MC, had been appointed by the convening authority to assist Appellant's trial defense counsel. According to Maj EB, Dr. MC provided "superb advice, insights, feedback, and opinions" to trial defense counsel, both before and during the trial. Maj EB noted that Dr. MC was prepared to testify if called upon to do so. Maj EB stated he did not call Dr. MC during motions practice because there was no disagreement over the scientific component of the testimony of the Government's expert in forensic psychology. Maj EB cross-examined the Government's expert on the factual basis of her testimony, which she derived from her pretrial interviews with SS and SS's mother. The Government's expert stated, in part, that SS had told her she "could not" and would not be able to testify in Appellant's presence. The pretrial interviews led the Government's expert to opine that SS would suffer psychological harm if required to testify in Appellant's presence. Neither trial defense counsel nor Dr. MC had any opportunity to interview SS prior to the trial.

Later, during the trial, the Government expert's testimony was undermined by SS's testimony when SS expressed a sincere desire to see Appellant. SS's enthusiasm to see Appellant resulted in the military judge's reversal of his earlier ruling permitting SS to testify remotely. At that point, trial defense counsel believed that the credibility of the government's expert had been "severely compromised." Trial counsel then elected not to call their expert in forensic psychology during the Government's case in chief. Maj EB and Capt VR ultimately agreed not to call Dr. MC as a witness during the trial. Capt VR explained:

> Maj [EB], Dr. [MC], and I regularly conferred over the course of
> the trial about whether her testimony would ultimately benefit

9

us, i.e., whether we would lose more on cross-examination than we would gain on direct [examination]. Ultimately, Dr. [MC] herself expressed skepticism that her testimony would prove beneficial, and on balance, Maj [EB] and I agreed with her assessment. Many aspects of the government's case had already been undermined by that point, including the Department of Children and Family Services' initial response to SS's disclosure, SS's forensic interview, and SS's testimony itself. We wanted to avoid giving the government any opportunity to try to rehabilitate their witnesses through one of our own.

In view of these considerations, we find the decision not to call the defense expert to testify as a witness completely reasonable.

Lastly, we also find trial defense counsel's decision not to object to the presence of representatives of BACA in the courtroom during Appellant's trial reasonable. Neither Maj EB nor Capt VR saw any legitimate grounds to object to the presence of members of the public observing the court-martial so long as they did not create any disturbance, even when the members of the public included the members of a victim advocacy group such as BACA. Maj EB stated that either the trial counsel or SS's SVC requested that no more than two representatives of BACA be present in the courtroom at any given time, and he recalled that no more than two representatives were present at any point during the court-martial. We further find Appellant's assertion that the presence of the BACA representatives was prejudicial and somehow deprived him of a presumption of innocence wholly unsupported by the record in this case, particularly in a court-martial heard by a military judge alone.

Having determined that Appellant's trial defense counsel acted reasonably under the circumstances raised by Appellant, we conclude that neither of the trial defense counsel was ineffective.

## C. Post-Trial Delay

Although not raised by the parties, we note Appellant was sentenced on 7 April 2017 but the convening authority did not take action until 14 August 2017, 129 days later. This period exceeds the 120-day threshold for a presumptively unreasonable post-trial delay established by the United States Court of Appeals for the Armed Forces (CAAF) in *United States v. Moreno*, 63 M.J. 129, 142 (C.A.A.F. 2006). Accordingly, we have considered the four factors identified in *Moreno* to assess whether Appellant's due process right to timely post-trial and appellate review has been violated. *See id.* at 135 (citations omitted).

Where, as here, an appellant has not shown prejudice from the delay, there is no due process violation unless the delay is so egregious as to "adversely affect the public's perception of the fairness and integrity of the military justice system." *See United States v. Toohey*, 63 M.J. 353, 362 (C.A.A.F. 2006). Appellant has alleged no prejudice and we perceive none; Appellant also did not specifically demand speedy post-trial processing. The record of trial indicates Appellant requested and received a ten-day extension to submit clemency matters. We also note Appellant's case was docketed with this court on 22 August 2017, only 8 days after action and well within the *Moreno* standard of 30 days. *See Moreno*, 63 M.J. at 142. Considering the relevant factors together, we cannot say the delay of nine days was so egregious as to impugn the fairness and integrity of the military justice system.

Recognizing our authority under Article 66(c), UCMJ, we have also considered whether relief for excessive post-trial delay is appropriate even in the absence of a due process violation. *See United States v. Tardif*, 57 M.J. 219, 223–25 (C.A.A.F. 2002). After considering the factors enumerated in *United States v. Gay*, 74 M.J. 736, 744 (A.F. Ct. Crim. App. 2015), *aff'd*, 75 M.J. 264 (C.A.A.F. 2016), we conclude it is not.

### III. CONCLUSION

The approved findings and sentence are correct in law and fact, and no error materially prejudicial to the substantial rights of Appellant occurred. Articles 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a), 866(c). Accordingly, the findings and sentence are **AFFIRMED**.

FOR THE COURT

*Carol K. Joyce*

CAROL K. JOYCE
Clerk of the Court